750 P.2d 95

C.A. "Chuck" SCHOONOVER, Plaintiff–Appellant–Cross Respondent,

v.

BONNER COUNTY, a Political Subdivision, of the State of Idaho, Defendant–Respondent–Cross Appellant.

John M. VALDEZ, Plaintiff–Appellant–Cross Respondent,

v.

BONNER COUNTY, a Political Subdivision, of the State of Idaho.

Nos. 16613, 16677.

Supreme Court of Idaho.

Feb. 2, 1988.

and further testified that the de facto county policy became that, upon termination of their employment with the County, sheriff's deputies would be paid for overtime accrued, provided the hours could be substantiated. This practice was routinely followed and, in fact, both former Sheriff Eveland and present Sheriff Don Nelson were paid in full for the hours of overtime they had accumulated while serving as deputy sheriffs.

Schoonover claims compensation for 1,893 overtime hours at a rate of $8.72 per hour, for a total of $16,506.96, for the time period January 1, 1977, through December 31, 1981. John Valdez claims overtime compensation totaling $8,130.06. The Schoonover case was tried to the district court and since it appeared the issues and result would be the same for Valdez, it was stipulated that the cases be consolidated, with the judgment and results of the appeal process in the Schoonover case to be binding upon the Valdez case. Consequently, all facts mentioned herein pertain to the claim filed by Schoonover.

In Schoonover's case, there was some confusion caused by poor record-keeping concerning the overtime hours. Schoonover's hours were reexamined and recompiled by Schoonover from sheriff's daily logs, which computation was not rebutted by Bonner County. The uncertainty as to overtime hours accrued grew out of an August, 1982, departmental meeting between Sheriff Eveland and his thirty-three deputy sheriffs. At that time, Sheriff Eveland explained that budgetary constraints required that the deputy sheriffs either forfeit their overtime hours greater than forty or forfeit a small pay raise. In the subsequent straw vote, thirty of the thirty-three deputies voted to forfeit overtime over forty hours and to accept the raise. Former Sheriff Eveland testified that, prior to this meeting, he had followed the county personnel manual by paying unused comp time to deputies whose employment terminated, and that he was aware of a "glut" of uncompensated hours among employees in the sheriff's office.

Harvey Richman, Coeur d'Alene, for plaintiff-appellant-cross respondent.

James E. Hunt, Sandpoint, for defendant-respondent-cross appellant.

HUNTLEY, Justice.

Plaintiffs C.A. "Chuck" Schoonover and John M. Valdez served as deputy sheriffs for Bonner County in the 1970's and early 1980's, during which time they accrued substantial overtime hours. The Bonner County policy manual in existence during that time gave overtime, in the form of "comp time" off, for all hours worked in excess of forty per week, at the discretion of the department head. The manual encouraged employees to "use comp time during the period in which it is earned." However, the Bonner County Sheriffs Department was understaffed and deputies were unable to use the "comp time." The Bonner County Commissioners testified that the County was aware that deputy sheriffs, as well as the sheriff himself, were accumulating overtime hours in large numbers,

Schoonover could not recall which way he had voted in the straw vote. Subsequent to the meeting, the Bonner County Clerk's computerized record system erased all overtime hours accrued over forty. However, no evidence was ever presented showing that Schoonover was aware of the change in overtime hours carried on the computer and no testimony was presented showing that wage check stubs received by Schoonover reflected the change.

Apparently, the erasure of hours from the computer system never resulted in an actual change of policy regarding payment of overtime hours accrued. The new policy was, in the trial court's words, "obviously ... never followed." Sheriff Eveland further testified that he had no legal authority or permission from the Bonner County Board of Commissioners to erase the previously accrued overtime hours. Indeed, in March, 1983, then Deputy Sheriff Don Nelson (now the sheriff of Bonner County) filed suit against Bonner County for his unpaid overtime, including overtime earned prior to the August, 1982 meeting. The suit settled and Nelson was paid for all overtime previously accrued. Sheriff Eveland then issued a directive reinstating all overtime hours and, after his own termination, Sheriff Eveland was paid for all of his overtime accrued, including hours accumulated prior to the August, 1982 meeting.

In late 1982, Schoonover entered into the S.T.E.P. program while remaining employed at the sheriff's department. His salary was then assumed by grant funds. On December 3, 1984, Schoonover tendered his resignation, having already demanded full payment of overtime due. Mr. Eveland recommended to the Board of County Commissioners that Schoonover be paid the sums claimed. However, on January 15, 1985, Don Nelson became sheriff of Bonner County and issued a new policy statement that no overtime would be paid to employees on termination. On April 2, 1985, the Board of County Commissioners rejected Schoonover's claim in total.

The trial court rejected Bonner County's defenses of statute of limitations, waiver, estoppel and laches and ruled that the County owed Schoonover full compensation for all overtime hours he had worked. On this issue, we affirm. The trial court next ruled that deputy sheriffs were "public officers" for purposes of I.C. § 45–615(4), and therefore not entitled to treble damages resulting from their claims for unpaid wages, relying upon *Buckalew v. Grangeville*, 100 Idaho 460, 600 P.2d 136 (1979). We reverse as to this issue and hold that, while deputy sheriffs are "public officers" with respect to the duties they perform, they are "employees" in the context of I.C. § 45–615(4) due to their status as "employees at will," and thus qualify for treble damages when their wages are wrongfully withheld on termination of employment.

## I. ENTITLEMENT TO COMPENSATION

In the absence of an applicable affirmative defense asserted by the County, a deputy sheriff is entitled to be paid for hours worked. The County has alleged numerous affirmative defenses, some of which may or may not have been abandoned upon appeal, all of which are unmeritorious and may be disposed of summarily. The County first alleges that Schoonover's cause of action is precluded by I.C. § 45–608, which prescribes the statute of limitations for actions involving collection of wages. Section 45–608 reads in pertinent part:

"Collection of Wages—Limitations.— ... [A]ny action thereon shall be commenced in a court of competent jurisdiction within two (2) years after the cause of action shall have accrued, provided, however, that in the event salary or wages have been paid to any employee and such employee claims additional salary, wages, overtime compensation, penalties or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment, any action therefor shall be commenced within six (6) months from the accrual of the cause of action...."

■ Here, suit was filed within one month of Schoonover's termination of employment. As has been established, the longstanding practice of the County was to

pay all overtime accrued upon termination. Indeed, the Bonner County personnel manual provided that: "Upon separation from employment from Bonner County, the employee will be paid for any unused vacation time." Schoonover could not, then, have demanded payment for "comp time" accrued prior to his termination of employment with the County. The assertion of the defense of failure to file within the statutory period is without merit and we affirm the trial court's ruling in that regard.

The County next asserts various equitable defenses such as equitable estoppel, quasi-estoppel, waiver and laches. The assertions of estoppel and waiver are, in large part, premised upon Schoonover's presence at the August, 1982 straw vote, which vote led to all overtime hours greater than forty being expunged from the County computer in December of that year. As the trial court noted, the "policy" adopted by the straw vote was never fully effectuated and was soon thereafter expressly rescinded. Additionally, Schoonover could not recall which way he had voted during the straw vote, nor did any witness testify in that regard.

 The elements required to sustain the defense of equitable estoppel require that a false representation or concealment of a material fact be made; that the party asserting estoppel did not know or could not discover the truth; that the false representation or concealment be made with intent that it be relied upon; and, that the misrepresentation resulted in detrimental reliance on the part of the party asserting estoppel. *Theriault v. A.H. Robins Co., Inc.,* 108 Idaho 303, 698 P.2d 365 (1985); *Keesee v. Fetzek,* 111 Idaho 360, 723 P.2d 904 (Ct.App.1986). As the trial court accurately noted: "There is no evidence of a false representation or a concealment.... There is no evidence that the County ... relied upon any representations of Mr. Schoonover.... No ... evidence supports this theory." Here, the evidence shows that the County was aware of the overtime hours being accrued by the deputy sheriffs. There was no concealment of such hours.

The County next asserts the equitable theory of quasi-estoppel. Quasi-estoppel is essentially a last-gasp theory under which a defendant who can point to no specific detrimental reliance due to plaintiffs' conduct may still assert that plaintiffs are estopped from asserting allegedly contrary positions where it would be unconscionable for them to do so.

The doctrine classified as quasi-estoppel has its basis in election, ratification, affirmance, acquiescence, or acceptance of benefits; and the principle precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him. The doctrine applies where it would be unconscionable to allow a party to maintain a position inconsistent with one in which he acquiesced or of which he accepted a benefit.

*KTVB, Inc. v. Boise City,* 94 Idaho 279, 281, 486 P.2d 992, 994 (1971) (quoting from *Clontz v. Fortner,* 88 Idaho 355, 364–65, 399 P.2d 949, 954 (1965)). (See also, *Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 6, 607 P.2d 1055, 1060 (1980)).

In the absence of any false recital or concealment on Schoonover's part, we can find no previous inconsistent position taken by Schoonover, nor is there any injustice or unconscionability in requiring that Bonner County pay Schoonover for the hours he has worked. As the trial court correctly noted, "plaintiff is not reaping an unconscionable advantage, but only being paid for labor actually performed for Bonner County...."

 The County's assertion of waiver on the part of Schoonover is, if possible, even more tenuous than the assertion of the estoppel theories.

Waiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel.

*Jones v. Maestas,* 108 Idaho 69, 696 P.2d 920 (Ct.App.1985). Waiver is an equitable theory involving a question of intent. It is the "voluntary, intentional relinquishment of a known right or advantage.... [I]t must appear, however, that the adverse

party has acted in reliance upon such a waiver and altered his position." *Brand S Corp. v. King*, 102 Idaho 731, 639 P.2d 429 (1981). Again, as already stated, Schoonover did not recall how he had voted in the meeting held in August 1982. Further, the County could not have known how he had voted and, in fact, never effectuated the "policy" allegedly established at that meeting. Both Sheriffs Eveland and Nelson were fully paid for past "comp time" accrued subsequent from and prior to that meeting. Justice and fairness, moreover, do not require this Court to conclude that Schoonover had waived his right to compensation for the hours he has worked; rather, those considerations mandate the opposite conclusion.

Finally, the County asserts the doctrine of laches. Laches is the equitable counterpart to the legal defense of statute of limitations. One who has unreasonably delayed pursuing an action to the prejudice or detriment of an adverse party will be denied equitable relief. *Bowler v. Board of Trustees, Etc.*, 101 Idaho 537, 617 P.2d 841 (1980); *Landis v. Hodgson*, 109 Idaho 252, 706 P.2d 1363 (Ct.App.1985). As we have already noted, Schoonover pursued his claim within one month of termination of employment. In short, he prosecuted his claim in a diligent and timely fashion and the assertion of laches is entirely without merit. The trial court's ruling that Schoonover is entitled to be paid for his hours of accumulated overtime work is affirmed.

## II. THE ENTITLEMENT TO TREBLE DAMAGES

Idaho's "Claims for Wages" Act provides:

> Any judgment for the plaintiff in a proceeding pursuant to this act shall include all costs reasonably incurred in connection with the proceedings and the plaintiff, ... shall be entitled to recover from the defendant, as damages, three (3) times the amount of unpaid wages found due and owing.

I.C. § 45–615(4).

The trial court concluded that "Mr. Schoonover was a 'public officer' within the meaning of *Buckalew v. Grangeville*, 100 Idaho 460, 600 P.2d 136 (1979) and not a mere wage earner," and therefore was unentitled to treble damages. The trial court predicated its holding that Schoonover was unentitled to treble damages solely upon its perception of our holding in *Buckalew, supra*. In that case, we discussed in detail the policy and legislative intent behind the enactment of I.C. § 45–615, quoting from *Goff v. H.J.H. Co.*, 95 Idaho 837, 839–40, 521 P.2d 661, 663–64 (1974):

> Furthermore, legislative intent and public policy support this requirement that treble damages be allowed where unpaid wages are due and owing. The legislature has logically distinguished between injuries to an interest in real property and withheld wages, making the awarding of treble damages discretionary in one case and mandatory in another. The average wage earner depends greatly on the regular receipt of earned wages. If unpaid, serious economic injury may result to the wage earner. The legislature also has recognized that the wage earner would not be fully compensated if he were allowed merely to recover, his withheld wages because of the costs of attorneys fees and suit. Although attorney's fees are authorized by statute, they can not be awarded unless the wage earner recovers all that he claims. Therefore, in many cases there is a need for additional compensation. Thus, although the award of treble damages does tend to penalize the employer, it also serves to fully compensate the wage earning employee for the injury caused him by the delay he experiences in recovering his withheld wages in a court of law and the expenses connected with the recovery.

We then held that a public officer, in that case, a chief of police, could not obtain treble damages and at the same time rely upon an exemption from a duty to mitigate damages given to "officers." In *Buckalew, supra*, we allowed the chief of police to continue to draw his salary while wrongfully excluded from office without crediting wages earned in other employment against the full amount of salary owed

him. We noted that public officers were exempted from the general rule as to mitigation of damages, as their right to compensation was an "incident" of their office, "belonging to the officer by virtue of his right to the office and not by reason of a contractual relationship.... The compensation belongs to the officer as an incident of his office, and he is entitled to it, not by force of any contract, but because the law attaches it to the office; ...." *Id.* 100 Idaho at 462, 600 P.2d 136 (citing to, Annotation 150 A.L.R. 100, 103). We then noted that:

> The status of public officer cannot serve to exempt him from a duty to mitigate while at the same time allowing him the benefits of a statute designed to protect wage earners who do have a duty to mitigate.

*Id.* at 463, 600 P.2d 136.

Our holding in *Buckalew* was specifically predicated upon an officer's entitlement to compensation by virtue of his status as "office-holder" rather than "employee."

In the instant case, in deciding that deputy sheriffs were "officers" for purposes of I.C. § 45–615(4), the trial court noted that I.C. § 59–404 requires all county "officers" to take an oath of office and I.C. § 59–406 requires all deputies to take a similar oath prior to assuming their duties. Article 18 § 6 of the Idaho Constitution and I.C. § 31–2001 both specifically denominate a sheriff as a county "officer." Pursuant to both Article 18 § 6 Idaho Constitution and I.C. § 31–2003, the sheriff has a right to appoint deputies necessary for the discharge of the duties of his office.

While the duty to take an oath of office may be a good indicator in distinguishing between an officer and an employee, it is by no means determinative. See, *Metcalf & Eddy v. Mitchell*, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384 (1926); *State ex rel. Barney v. Hawkins*, 79 Mont. 506, 257 P. 411 (1927). See also, 56 Am.Jur.2d Municipal Corporations, Etc. § 233.

The distinction between "office" and "employment" is not always clear. Oftentimes, the distinction is made that an officer accrues salary as an incident of office

irrespective of services rendered, whereas an employee can only enforce claims for wages for services performed. *Quintard v. New York*, 51 App.Div. 233, 64 N.Y.S. 904 (1900). The nature of the duties performed can also be a determinative factor, with duties which are constant and continuing rather than occasional or intermittent denoting status as an officer. *Olson v. City of Superior*, 240 Wis. 108, 2 N.W.2d 718 (1942).

Deputies have been described as "officers" in their own right in that they serve as agents for their principal, may discharge the public duties of the principal, and generally render their principal liable for their acts or omission. *Larson v. State*, 564 P.2d 365 (Alaska 1977); *Martindale v. Honey*, 259 Ark. 416, 533 S.W.2d 198 (1976), later app. 261 Ark. 708, 551 S.W.2d 202 (1977); *Dosker v. Andrus*, 342 Mich. 548, 70 N.W.2d 765 (1955). See also, 63A Am.Jur.2d Public Officers and Employees §§ 567–575.

Insofar as status is determined between the officer and his deputies, deputies are generally employees at will, with the principal having the right to remove a deputy at his pleasure. *Guy v. Mohave County*, 701 F.2d 73 (9th Cir.1982); *Irby v. Sullivan*, 737 F.2d 1418 (5th Cir.1984); *Roberts v. State*, 151 Ind.App. 83, 278 N.E.2d 285 (1972). This is particularly true in the case of deputy sheriffs, with courts generally holding that a sheriff has absolute control over the selection and retention of his deputy sheriffs. *Sikes v. Boone*, 562 F.Supp. 74 (N.D.Fla.1983), affirmed without opinion 723 F.2d 918 (11th Cir.1983), cert. den. 466 U.S. 959, 104 S.Ct. 2171, 80 L.Ed.2d 555 (1984). See also, 70 Am.Jur.2d Sheriffs, Police, & Constables § 13.

In response to this duality of definition, "a charter or statute declaring that as used therein, the term 'employee' shall include public officers, has been held effective to extend the application of the term 'employees' so as to include public officers." 63A Am.Jur.2d Public Officers and Employees § 11. See also, *Knight v. Board of Administration*, 32 Cal.2d 400, 196 P.2d 547 (1948). Importantly, I.C. § 59–306 implicit-

ly denominates "deputies" as "employees" of the state:

> **Appointment of Employees.**—The appointment of every deputy, clerk *or other employee* of the state of Idaho, including contract employees, whose salary or other compensation is payable out of any appropriation or allotment ... shall be made on forms prescribed by the division of budget, policy planning and coordination by the appointing officer, board, commission or other designated authority.... (Emphasis added).

In the case of deputy sheriffs, the "appointing officer" referred to in § 59–306 would be the county sheriff. The legislature, through I.C. § 59–306, has provided that deputies are "employees" without entitlement to their office.

■ It is entirely in keeping with our holding in *Buckalew* that Schoonover be afforded his right to recover treble damages. In *Buckalew*, the plaintiff was not denied treble damages because he was chief of police but because, as chief of police, he was entitled to salary as an incident of his right to his office. I.C. § 59–306. The absence of that entitlement to salary, as well as Schoonover's status as an "employee at will" indicate to us that his status, for wage purposes, is not equal to that of a chief of police, or of a sheriff. The rationale behind which treble damages are given (i.e. to compensate wage earners dependent on earned wages) operates to require treble damages be awarded in the instant case.

Our other opinions in related cases do not require that we alter our analysis. In *LaBrosse v. Board of Commissioners, Boundary County,* 105 Idaho 730, 672 P.2d 1060 (1983), a *county sheriff* was denied treble damages for unpaid wages under the statutory scheme embodied in I.C. § 45–605. See also, *Gilbert v. Moore,* 108 Idaho 165, 697 P.2d 1179 (1985), wherein we upheld an award of treble damages to a school district bus driver.

The argument has been made that the treble damage provision of I.C. § 45–615(4) can only apply in actions prosecuted by the director of the Department of Labor and Industrial Services acting on behalf of wage claimants. This argument seems to be that, unless the claim is prosecuted through the Department of Labor, the employee must seek recovery under I.C. § 45–606, which provides that, in addition to the amount of outstanding wages, the employee can receive up to a maximum of thirty days additional wages. Proponents of this rationale note that I.C. §§ 45–601 through 608 were enacted as one whole, and amendments to the Claims for Wages Act, I.C. §§ 45–606 through 615, enacted in 1967, constitute a wholly discrete act through which treble damages may be awarded provided the claim proceeds through the Department of Labor.

■ This Court has already resolved this issue and rejected the above argument in *Lawless v. Davis,* 98 Idaho 175, 560 P.2d 497 (1977), and, *Rodwell v. Serendipity, Inc.,* 99 Idaho 894, 591 P.2d 141 (1979). In *Lawless,* we noted:

> As amended, the Idaho Claims for Wages Statute provided a comprehensive recovery scheme. First, by authorizing the prosecution of claims by the Department of Labor, the amendments made the enforcement of the statute more likely. And second, as we interpret the statute, the legislature provided an aggrieved employee with alternative remedies to meet the circumstances of his particular case. Which statutory provision will better serve the employee will depend upon the amount of the outstanding wages. If the amount of outstanding wages is nominal, the employee will be better served by seeking recovery under I.C. § 45–606. In addition to the amount of outstanding wages, he could receive up to a maximum of thirty days additional wages. If the amount of outstanding wages is larger, however, it will behoove the employee to seek a treble recovery under I.C. § 45–615(4).

*Id.* 98 Idaho at 177, 560 P.2d at 499.

In both *Lawless* and *Rodwell,* treble damage awards were affirmed, with Justice Bakes dissenting in *Lawless* and concurring specially in *Rodwell,* both times suggesting that:

[T]he trebling of wages as provided in I.C. § 45–615(4) should be limited to those actions in which the director of the Department of Labor and Industrial Services represents a wage claimant.... In my view, it is the trebling of the wage claim in this case which causes the unreasonable windfall and not the award of attorney fees. However, the Court has ruled otherwise in *Lawless*, and that decision is controlling in this [Rodwell] case.

As Justice Bakes noted in his special concurrence in *Rodwell*, the decision in *Lawless* is controlling. A wage earner need not proceed through the Department of Labor to trigger relief pursuant to I.C. § 45–615(4).

### III. ATTORNEY FEES

The trial court awarded attorney fees below pursuant to I.C. § 12–121, specifically finding that "the County defended the original overtime amount claimed unreasonably and without foundation.... There appears to have been no justification in not paying the Plaintiff the overtime amount when first demanded." We disapprove this award of attorney fees below, as it was inaccurately given pursuant to I.C. § 12–121. Attorney fee awards in suits for wages are properly awarded pursuant to I.C. § 45–605, which provides:

> **Attorneys' fees in suits for wages.—** Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his employment, and shall establish, by decision of the court or verdict of the jury, that the amount for which he has brought suit is justly due, and that a demand has been made, in writing, at least five (5) days before suit was brought, for a sum not to exceed the amount so found due, *it shall be the duty of the court* before which the case shall be tried to allow to the plaintiff a reasonable attorney's fee, in addition to the amount found due for wages, to be taxed as costs of suit. (Emphasis added).

Schoonover specifically sought fees pursuant to I.C. § 45–605 in his complaint, and the County's answer to the complaint did not deny the appropriateness of an award under that statute in the event plaintiff were to prevail. On appeal, we cannot ascertain whether each of the conditions found in § 45–605 have been met. It is for the trial court to determine upon remand whether "the amount for which [plaintiff] has brought suit is justly due, and [whether] a demand has been made, in writing, at least five (5) days before suit was brought, for a sum not to exceed the amount so found due...."

Remanded for proceedings consistent herewith. Costs on appeal to the appellant. Attorney fees on appeal under I.C. § 45–605 to be determined and fixed by the trial court upon remand.

SHEPARD, C.J., BAKES and BISTLINE, JJ., and TOWLES, J. Pro Tem., concur.