918 P.2d 576

**Steven G. BARTH, Plaintiff–Respondent–Cross Appellant,**

v.

**CANYON COUNTY, Defendant–Appellant–Cross Respondent.**

No. 21892.

Supreme Court of Idaho,
Boise, February 1996 Term.

May 23, 1996.

Moore, Baskin & Parker, Boise, for appellant. Michael W. Moore argued.

William B. Latta, Jr., Boise, for respondent.

JOHNSON, Justice.

This is a wage claim case which also involves issues of state constitutional law. We conclude:

1. A sheriff's deputy may not recover additional wages against the county based on quantum meruit for a position not authorized by the county commissioners.

2. Once the county commissioners have empowered a sheriff to appoint a deputy, the commissioners may not limit the sheriff's authority in appointing the deputy.

3. An award of treble damages to an employee because of the employer's failure to pay the amount of wages due is not a penalty.

4. A demand by an employee for payment of unpaid wages does not constitute a demand for the purposes of awarding attorney fees pursuant to I.C. § 45–615 if the demand indicates that the employee will not accept the amount demanded, if it is tendered.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Steven G. Barth sued Canyon County (the county) under Idaho's wage claim law (the wage claim law) (I.C. §§ 45–601 to –617 (Supp.1995)) and based on quantum meruit seeking unpaid wages for services performed while he was employed by the county sheriff.

Barth applied for a law enforcement position with the sheriff in October 1992. The county commissioners (the commissioners) approved the hiring of Barth as a deputy sheriff on February 10, 1993. His starting salary was $18,756. This increased to $19,318 when he received a three percent cost of living raise on April 12, 1993.

Before Barth was hired, the commissioners created a personnel manual (the manual) that became effective on January 29, 1993. The manual established a comprehensive personnel system, including a classification plan, a compensation plan, an equal employment opportunity policy, employee selection procedures, vacancy procedures, hiring procedures, background inquiry procedures, post-selection procedures, probation procedures, job performance procedures, leave policies, an ethical conduct policy, and disciplinary procedures. The manual divided employees into two types—classified, to whom all of the rules applied, and nonclassified, to whom none of the rules except those concerning personal leave applied.

On January 26, 1993, the commissioners created the position of director of operations (the director), to be supervised by the sheriff, who was to prepare the director's job description. The commissioners stated that the director's duties included the administration, supervision, and management of the jail. As originally created, the director was a nonclassified employee.

The commissioners approved the sheriff's appointment of another individual as the first director (the first director) on February 1, 1993 at an annual salary of $29,863. The first director resigned on April 18, 1993 because of a dispute with the sheriff. In return for the first director's resignation, the sheriff agreed to pay the first director thirty days severance pay and allowed him approximately 450 hours of personal leave. The first director continued to receive the director's salary but did not actually work during the period of personal leave. Based on this arrangement, the effective date of the first director's resignation was September 15, 1993.

On April 20, 1993, the sheriff promoted Barth to the position of "acting lieutenant/jail commander." The sheriff directed Barth to assume the duties of the director because the first director was no longer actually working. The commissioners did not approve this promotion and did not increase Barth's salary.

On August 24, 1993, the commissioners amended the manual by changing the director position from nonclassified to classified, making the position subject to all the manual rules.

On September 30, 1993, the sheriff wrote to the commissioners informing them that Barth had functioned as director since May 1993. The sheriff requested that Barth be appointed, effective October 1, 1993, as the director.

On October 5, 1993, the sheriff appointed Barth as the director, thereby promoting Barth to the rank of captain. The next day, the sheriff submitted a salary rate request to the commissioners requesting approval of Barth's appointment with a corresponding pay increase to $30,170. The commissioners did not approve the salary request. Barth's appointment as the director did not meet the requirements of the manual or the standards approved by the commissioners, including the requirements for becoming a captain.

Barth sued the county seeking unpaid wages, treble damages, and attorney fees. The commissioners defended on the following grounds: (1) under article XVIII, section 6 of the Idaho Constitution, the sheriff had no authority to promote Barth or increase his salary; (2) only the commissioners could approve salary increases; and (3) Barth's appointment as the director did not comply with the manual.

The trial court granted summary judgment denying Barth any additional wages for the period prior to October 5, 1993, but granting Barth compensation as the director after that date. The trial court also denied Barth treble damages and attorney fees. The commissioners appealed. Barth cross-appealed.

## II.

## BARTH IS NOT ENTITLED TO ADDITIONAL WAGES BASED ON QUANTUM MERUIT.

■ Barth asserts that he is entitled to additional wages for the period prior to October 5, 1993 based on quantum meruit. We disagree.

The Idaho Constitution states:

The sheriff, county assessor, county treasurer, and ex-officio tax collector, auditor and recorder and clerk of the district court shall be empowered by the county commissioners to appoint such deputies and clerical assistants as the business of their office may require, said deputies and clerical assistants to receive such compensation as may be fixed by the county commissioners.

Idaho Const. art. XVIII, § 6. This Court has ruled that this section grants the authority to decide if a county officer requires a deputy only to the commissioners. *Clayton v. Barnes,* 52 Idaho 418, 425, 16 P.2d 1056, 1059 (1932); *Taylor v. Canyon County,* 6 Idaho 466, 470, 56 P. 168, 169–70 (1899); *Campbell v. Board of Comm'rs,* 5 Idaho 53, 55, 46 P. 1022, 1022 (1896). In the present case, the commissioners had not created or approved the position "acting lieutenant/jail commander" to which the sheriff appointed Barth on April 20, 1993.

■ Quantum meruit is part of the doctrine of contracts implied in law. A contract implied in law "is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of

the parties." *Continental Forest Prods., Inc. v. Chandler Supply Co.,* 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974). To recover on a contract implied in law, the claimant must show that the services were rendered with the reasonable expectation that the person who benefited from them would pay for them. *Nagele v. Miller,* 73 Idaho 441, 444, 253 P.2d 233, 235 (1953). The recipient may not have requested the services, but if the recipient knowingly and voluntarily accepts the benefits under circumstances where it would be unjust if the recipient did not pay for them, the courts will impose an obligation to pay. *Gillette v. Storm Circle Ranch,* 101 Idaho 663, 666, 619 P.2d 1116, 1119 (1980); *Weber v. Eastern Idaho Packing Corp.,* 94 Idaho 694, 697, 496 P.2d 693, 696 (1972), *overruled on other grounds by Pierson v. Sewell,* 97 Idaho 38, 45, 539 P.2d 590, 597 (1975); *Shurrum v. Watts,* 80 Idaho 44, 51, 324 P.2d 380, 384 (1958); *Reddy v. Johnston,* 77 Idaho 402, 406, 293 P.2d 945, 947 (1956); *Nagele,* 73 Idaho at 444, 253 P.2d at 235.

*Clayton v. Barnes,* 52 Idaho 418, 16 P.2d 1056 (1932) eliminates quantum meruit as a basis for recovery by Barth. In *Clayton,* the county assessor sought to recover the attorney fees he incurred in an earlier suit against the Bonneville County commissioners. In the earlier suit, the county assessor asked for a writ of mandate commanding the commissioners to provide him with emergency employees even though it would exceed his budget. The court issued the writ and no appeal followed. The county assessor subsequently sued the commissioners for attorney fees incurred in connection with getting the writ. The trial court denied the attorney fees and the county assessor appealed. This Court denied the county assessor's claim because the commissioners had not approved the position of the attorney to represent the assessor and because the assessor was not authorized to appoint the attorney. The Court stated:

> [O]ne who demands payment of a claim against a county must show some constitutional or statutory authority therefore, or that it arises from some contract, express or implied, which finds authority in law. It is also a well-settled rule that the payment of such claim cannot be allowed upon the theory that the services performed for which compensation is claimed were beneficial to the county. It is well established that the right of an officer to demand expenses incurred by him in the performance of an official duty must be found in the Constitution or the statutes confirming it, either directly or by necessary implication.

*Id.* at 423, 16 P.2d at 1058 (citations omitted).

■ Applying *Clayton* to this case, Barth must show that his appointment was authorized by either the constitution or a statute. The sheriff had no constitutional or statutory authority to appoint Barth to the position of "acting lieutenant/jail commander" because the commissioners had not approved the creation of the position. In addition, *Clayton* rejects Barth's argument that his equity theory allows him to circumvent the requirement that he show constitutional or statutory authority. *Clayton* states that a claim cannot be based on the theory that the services benefited the county, which is the theory upon which quantum is based. Thus, according to *Clayton,* there is no equity exception to the requirement that a claim for services must be based on constitutional or statutory authority.

Neither *H.J. McNeel, Inc. v. Canyon County,* 76 Idaho 74, 277 P.2d 554 (1954) nor *St. Alphonsus Regional Medical Ctr., Ltd. v. Killeen,* 124 Idaho 197, 858 P.2d 736 (1993), cited by Barth, are to the contrary. In *McNeel* and *Killeen,* the Court ruled that the power to make a contract must be present before a claimant may establish a contract implied in law. The sheriff did not have the power to make a contract with Barth for a position that the commissioners had not created.

## III.

### BARTH IS ENTITLED TO ADDITIONAL WAGES FOR THE PERIOD BEGINNING OCTOBER 5, 1993.

■ The commissioners assert that Barth is not entitled to additional wages as the director for the period beginning October 5, 1993. We disagree.

The Idaho Constitution states that the "sheriff ... shall be empowered by the county commissioners to appoint such deputies ... as the business of [the] office may require, said deputies ... to receive such compensation as may be fixed by the county commissioners." Idaho Const. art. XVIII, § 6. As we have pointed out above, this section of the constitution grants the power to authorize a deputy position only to the commissioners. Before the commissioners may authorize the position, they must first determine whether a new deputy is necessary. *Taylor,* 6 Idaho at 470, 56 P. at 169–70. Once the commissioners empower the sheriff to appoint a deputy, however, the county is liable for the deputy's wages. Idaho Const. art. XVIII, § 6 ("[D]eputies [are] ... to receive such compensation as may be fixed by the county commissioners.").

As originally drafted, part of article XVIII, section 6 of the Idaho Constitution read: "The county commissioners may employ such deputies and clerical assistants for the clerk of the district court, auditor and recorder and sheriff as may be necessary." 2 Proceedings and Debates of the Constitutional Convention of Idaho 1813–14 (I.W.Hart, ed.). One delegate, Mr. Heyburn, worried that this wording would "allow the commissioners, in case they chose to be too stubborn, to appoint a deputy for sheriff against his protest.... [T]he language ... would place the power entirely in the hands of the commissioners to make an appointment against his protest, which ... is not right." *Id.* at 1816.

There were two main reasons the framers did not want the power to appoint left with the commissioners. First, because a sheriff put up a bond which made the sheriff responsible for the work of the deputies, delegate Morgan reasoned that "certainly the commissioners ought not to have the power to appoint a [person] not selected by [the sheriff]." *Id.* at 1817. Second, the framers recognized that there could be political conflicts between the commissioners and the sheriff. As delegate Mayhew explained:

My idea about ... [the sheriff's office] is that ... [it is a] political office[ ], and when a [person] is elected to that position, let [that person's] politics be what they may, whether democratic or republican, it is [that person's] prerogative to say who [that person's] deputies shall be. If the county commissioners have a contrary view of politics, then there comes a clash, and if they are bull-headed and strong-headed, it will have a tendency to create that turmoil and dissatisfaction and dissension in the counties that will be almost impossible to reconcile.

*Id.* at 1818. The framers therefore decided that it would be best to give the sheriff the power to appoint deputies "without giving power to the county commissioners to interfere." *Id.* at 1819. They then amended article XVIII, section 6 to read almost exactly as it does today. They decided that the amended section "authorizes ... [the office of the sheriff] to appoint such [deputies] as [the office] require[s], and then the commissioners fix the pay, but they cannot appoint." *Id.* This history of article XVIII, section 6 reaffirms the plain meaning of the section itself. The framers intended to prohibit the commissioners from interfering with the sheriff's power to appoint deputies the commissioners had authorized.

*Boughton v. Price,* 70 Idaho 243, 215 P.2d 286 (1950) is cited by the commissioners for the proposition that they may impose greater qualifications for a position than the constitution imposes. In *Boughton,* the constitutional article at issue listed the qualifications for district judges. The legislature added to those qualifications. The Court ruled that this was permissible because the constitution only set out the minimum qualifications. In the present case, article XVIII, section 6 does not set out minimum qualifications to which the commissioners may add. Rather, it specifically grants to the sheriff the power to appoint deputies to positions authorized by the commissioners.

*Barton v. Alexander,* 27 Idaho 286, 148 P. 471 (1915), cited by the commissioners in support of their imposition of qualifications for deputies, is also distinguishable from this case. In *Barton,* there was no specific constitutional provision granting the authority to appoint to the party protesting the qualifications.

Although the commissioners have the sole authority to authorize the hiring of deputies, the commissioners do not have the authority to impose qualifications to be followed in hiring these deputies.

## IV.

### BARTH IS ENTITLED TO TREEBLE DAMAGES.

■ Barth asserts that pursuant to I.C. § 45–617(4) he is entitled to treble the amount of additional wages to which he is entitled. We agree.

Idaho Code § 45–617(4) states that "the plaintiff, or the director [of the department of labor and industrial services] in his behalf, shall be entitled to recover from the defendant, as damages, three (3) times the amount of unpaid wages found due and owing." In 1989, in amending the wage claim law, the legislature added I.C. § 45–611. 1989 Idaho Sess. Laws ch. 280, § 12, 677, 681–82. The first subsection of this new section requires the employer to pay all wages not in dispute, leaving to the employee all remedies to which the employee is otherwise entitled. I.C. § 45–611(1). If the employer pays the non-disputed wages before a certain deadline, "then no penalties may be assessed under this chapter, unless it can be shown that the remaining balance of wages due were withheld willfully, arbitrarily and without just cause." Id. The issue we must resolve is whether I.C. § 45–611 applies to I.C. § 45–617(4).

■ When a statute allows an award beyond actual damages, we must decide whether the award is intended to be a penalty or compensation. If it is intended to be a penalty, the statute's requirements must be strictly construed; if it is intended to be compensatory, the statutory requirements are not to be strictly construed. See Halliday v. Farmers Ins. Exch., 89 Idaho 293, 297–301, 404 P.2d 634, 636–38 (1965) (determining whether mandatory attorney fees in I.C. § 41–1839 were penal or compensatory); Tomazich v. Padis, 72 Idaho 77, 82, 237 P.2d 1071, 1074 (1951) (construing treble damages section of Federal Housing and Rent Act to be penal in nature). In the cases where treble damages are a penalty, the Court insists that the plaintiff show that the defendant acted maliciously, wantonly, or oppressively (i.e., in bad faith) before the Court will award treble damages. See, e.g., Mecham v. Nelson, 92 Idaho 783, 789, 451 P.2d 529, 535 (1969) (applying the bad faith rule to unlawful detainer statute's treble damage provision). If the Court determines the statute is not penal, it does not insist on a showing of "bad faith."

In Goff v. H.J.H. Co., 95 Idaho 837, 521 P.2d 661 (1974), the Court considered whether to award treble damages under the predecessor to I.C. § 45–617(4). In Goff, an employer, relying on the unlawful detainer cases, argued that the wage claim treble damage awards are penal in nature and require a showing of bad faith. Id. at 839, 521 P.2d at 663. The Court rejected the employer's argument, stating:

The average wage earner depends greatly on the regular receipt of earned wages. If unpaid, serious economic injury may result to the wage earner. The legislature also has recognized that the wage earner would not be fully *compensated* if he were allowed merely to recover his withheld wages because of the costs of attorney's fees and suit. Although attorney's fees are authorized by statute, they can not be awarded unless the wage earner recovers all that he claims. Therefore, in many cases there is a need for additional *compensation. Thus, although the award of treble damages does tend to penalize the employer, it also serves to fully compensate the wage earning employee for the injury caused him by the delay he experiences in recovering his withheld wages in a court of law and the expenses connected with recovery.*

Id. at 839–40, 521 P.2d at 663–64 (emphasis added). Contra Gano v. Air Idaho, Inc., 99 Idaho 720, 722, 587 P.2d 1255, 1257 (1978) (calling the treble damages section a penalty and requiring a showing of wrongful withholding). But see Schoonover v. Bonner County, 113 Idaho 916, 922, 750 P.2d 95, 101 (1988) (stating that the rationale for awarding treble damages is to compensate wage earners); Gilbert v. Moore, 108 Idaho 165,

169, 697 P.2d 1179, 1183 (1985) (holding that *Goff* was not wrongly decided).

When the legislature amended the wage claim law (I.C. §§ 45–601 to –617) in 1989, it specifically referred to penalties for failure to pay wages due upon separation from employment (I.C. §§ 45–606 and –607) and allowed the director of the department of labor and industrial services to levy a civil penalty upon any employer who failed to obtain an exemption from the requirement to pay wages within ten days following the end of a pay period. 1989 Idaho Sess. Laws ch. 280, §§ 7–8, 677, 679–81. These references to penalties indicate that the legislature intended the word "penalty" in I.C. § 45–611 to refer to the penalties provided in these sections of the wage claim law.

There is no reference to "penalty" in the title or in the body of I.C. § 45–617. We find no indication that the legislature intended that a treble damage award pursuant to I.C. § 45–617(4) should be considered a "penalty" under I.C. § 45–611. We assume that when the legislature made the 1989 amendments to the wage claim law it knew that this Court had construed treble damage awards under the wage claim law as not being penalties. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990) (assuming the legislature has full knowledge of the existing judicial decisions and case law of the state). Therefore, we conclude that the legislature did not intend the word penalty, as used in I.C. § 45–611, to refer to the award of treble damages in I.C. § 45–617(4). Based on this conclusion, Barth is entitled to treble damages.

## V.

### BARTH IS NOT ENTITLED TO ATTORNEY FEES.

Barth asserts that the trial court should have awarded him attorney fees pursuant to I.C. § 45–615. We disagree.

Idaho Code § 45–615 requires an employee who seeks attorney fees in a suit for wages to make a demand "for a sum not to exceed the amount so found due." This Court has held that if the amount of damages the employee seeks far exceeds the amount

to which the trial court finds the employee is lawfully entitled, the trial court may not award attorney fees. *Gano v. Air Idaho, Inc.* 99 Idaho 720, 723, 587 P.2d 1255, 1258 (1978).

Barth's demand for wages stated:

As the matter is disputed, the sum unknown and an equitable claim of *quantum meruit,* is necessarily made, demand is hereby made for the sum of One Dollar ($1.00), solely for the purpose of compliance with the wage claim statute. Of course, *tender of that sum will be insufficient to extinguish the debt asserted to be owed and will be rejected, if tendered.* (Emphasis added).

Barth's statement that he would reject a tender of one dollar, the amount of his demand, destroys the effect of the demand. By stating that he would not accept the amount he demanded, Barth effectively made no demand. By not making an effective demand, Barth did not satisfy the statute's requirement.

## VI.

### CONCLUSION

We affirm the summary judgments of the trial court, except the denial of treble damages. We reverse the denial of treble damages and remand the case to the trial court for entry of an amended judgment.

We award Barth costs, but not attorney fees, on appeal.

TROUT, SILAK and SCHROEDER, JJ., and B. WOOD, J. Pro Tem., concur.