72 P.3d 868

**NAMPA & MERIDIAN IRRIGATION DISTRICT, Plaintiff–Respondent– Cross Appellant,**

v.

**Tim J. MUSSELL and Carol M. Mussell, dba Victory Greens Nursery, Defendants– Appellants–Cross Respondents.**

No. 28713.

Supreme Court of Idaho, Boise, April 2003 Term.

June 18, 2003.

Howard Lopez & Kelly PLLC, Boise, for appellants. John P. Howard and Randall C. Probasco argued.

Ringert, Clark Chtd., Boise, for respondent. Daniel V. Steenson argued.

EISMANN, Justice.

This is an appeal from a judgment awarding damages resulting from the interference with an easement. We affirm the judgment as modified and remand this case for further modification of the amount to award as damages.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff Nampa & Meridian Irrigation District (District) is a duly organized irrigation district under Idaho law. It has an extensive system of canals, laterals, and sublaterals providing water to approximately 64,000 acres of residential, agricultural, and industrial lands located in Ada and Canyon counties in Idaho. The defendants Tim and Carol Mussell own a 23–acre parcel of real property in Ada County upon which they operate a nursery and landscaping business known as Victory Greens Nursery. The northeastern boundary of the Mussells' property is approximately 1550 feet in length. For over eighty years prior to November

2000, the District has had an easement along the northeastern edge of the Mussells' property for an earthen lateral known as the Kennedy Lateral. The centerline of the Lateral was the boundary of the property. The Kennedy Lateral carries up to 3,000 miner's inches of water for delivery to more than 3,000 acres of land, most of which is located downstream from the Mussells' property.

The adjoining land to the northeast is higher in elevation than the Mussells' property. The northeastern bank of the Kennedy Lateral was generally the same level as that adjoining land. The southeastern bank of the Lateral, which was located on the Mussells' property, was about eight to fifteen feet wide at the top, and it then sloped downward a distance ranging from 100 to 200 feet across the Mussells' property until it reached the level of the remainder of the property.

When the Mussells purchased the property in 1993, it was agricultural property that appeared not to have been farmed for ten to fifteen years. In the fall of 1997, they discovered that the portion of their property adjacent to the northern end of the Kennedy Lateral was saturated with moisture as a result of water seepage that was aggravated by gopher holes. Their attempts to control the gophers and seal the gopher holes did not eliminate the seepage and boggy conditions on that portion of their property.

In November 2000, Mr. Mussell decided to excavate the sloping bank of the Kennedy Lateral in an attempt both to divert the seepage and to expand the usable portion of the property. Without first consulting an engineer or other expert, or contacting the District, Mr. Mussell excavated almost the entire length of the slope of the southeastern bank of the Kennedy Lateral. When he was finished, the bank ranged from eight to twelve feet in width and, rather than sloping, was vertical ranging from ten to twelve feet above ground level at the northeasterly end of the Mussell property to two to four feet above ground level at the southeasterly end.

Mr. Mussell recognized that his excavation compromised the Kennedy Lateral, and he planned to install a retaining wall along the bank to support it, but he had not previously contacted anyone regarding the design or feasibility of doing so. On November 17, 2000, the District learned of Mr. Mussell's excavation of the bank of the Kennedy Lateral. After viewing the area, a representative of the District told Mr. Mussell to take no further action until he had obtained engineering plans and the District approved them. The District representative told Mr. Mussell that time was of the essence and that work needed to be completed by March 15, 2001, so that the Kennedy Lateral would be ready for the 2001 irrigation season.

Mr. Mussell contacted an engineer to design a retaining wall, and on December 15, 2000, the engineer submitted a preliminary plan. On January 3, 2001, the engineer submitted a modified plan showing that the retaining wall would be constructed at least fifteen feet from the channel of the Lateral. The proposed retaining wall, as shown in those plans, would not have prevented the failure of the Kennedy Lateral when it was filled with water. Such failure would cause flooding of the Mussells' property and adjacent properties and would cause significant crop losses on those downstream lands served by the Lateral.

The District decided to repair the portion of the Kennedy Lateral adjoining the Mussells' property by replacing it with a concrete pipeline. It installed the pipeline in January and February of 2001. Installing the concrete pipeline was the most expedient and cost-effective manner to repair the damage done by Mr. Mussell.

On March 21, 2001, the District filed this lawsuit to recover damages for the cost of repairing the Kennedy Lateral based upon the theories of negligence, unreasonable interference with an easement, and negligence per se based upon a violation of Idaho Code § 55–310. The District also sought to enjoin the Mussells from doing anything in the future that would obstruct, damage, or interfere with the District's easement. On April 9, 2002, the District filed an amended complaint adding a claim for treble damages pursuant to Idaho Code § 42–902.

This case was tried to the district court, which issued its findings of fact, conclusions of law, and order on June 13, 2002. The

court found that the slope removed by Mr. Mussell provided "sub-adjacent support" for the Kennedy Lateral, that pursuant to Idaho Code § 55–310 Mr. Mussell had a duty to use ordinary care and skill in excavating the slope, and that he was negligent and breached that duty of care. The court found that the damages recoverable by the District totaled $127,245.41 but it was not entitled to treble damages pursuant to Idaho Code § 42–902.

On June 28, 2002, the district court entered judgment in favor of the District in the sum of $127,245.41. The Mussells timely appealed from the judgment, and the District cross-appealed the court's failure to award treble damages.

## II. ISSUES ON APPEAL

A. Did the district court err in finding that the District was entitled to recover damages from the Mussells?

B. Did the district court apply the proper measure of damages?

C. Was the award of damages supported by the evidence?

D. Was the District entitled to treble damages pursuant to Idaho Code § 42–902?

E. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

 A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001); IDAHO R. CIV. P. 52(a). When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001). It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. *Rowley v. Fuhrman*, 133 Idaho 105, 982 P.2d 940 (1999). On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. *Id.* Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 39 P.3d 588 (2001).

### A. Did the District Court Err in Finding that the District Was Entitled to Recover Damages from the Mussells?

The district court found that the Mussells were liable for damages because they negligently breached their duty to provide sub-adjacent support for the Kennedy Lateral as required by Idaho Code § 55–310, which provides:

Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjacent land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavation.

"The right of lateral support is the right which soil in its natural state has to support from land adjoining it." 1 AM. JUR.2d *Adjoining Landowners* § 40 (1994). "Closely related to the matter of lateral support and governed by similar rules is that of subjacent support, by which is meant the support of the surface by the underlying strata of the earth, or the support of the upper floors of a building by the part below." *Id.* at § 80. Although the district court found that Mr. Mussell's excavation "removed some of the sub-adjacent support for the Kennedy Lateral," it is clear that the district court meant the lateral support. There was no contention that Mr. Mussell removed earth underlying the Kennedy Lateral.

The Mussells contend that the evidence in this case did not establish liability because the right to lateral support only applies to land in its natural state and does not include the additional weight of buildings or other structures, see *Id.* at § 44, and that a cause of action does not accrue until the earth actually subsides, see *Id.* at § 70. The Mussells argue that their duty to provide lateral support did not include a duty to provide

lateral support for the added weight of a water-filled lateral and that the district court did not find that there was actual subsidence of any soil within the boundaries of the District's easement.

■ It is unnecessary to determine whether the Mussells are liable based upon a breach of their duty under Idaho Code § 55–310 to provide lateral support because they are liable for unreasonably interfering with the District's easement. Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory. *Row v. State,* 135 Idaho 573, 21 P.3d 895 (2001). Even if the theory adopted by the district court was erroneous, the Mussells are liable based upon the theory, alleged by the District in its amended complaint, that the Mussells unreasonably interfered with the District's easement.

■ The District had an easement across the Mussells' property for the Kennedy Lateral. As the owners of the servient estate, the Mussells could use their property in any manner not inconsistent with, or which did not materially interfere with, the District's use of its easement. *Nampa & Meridian Irr. Dist. v. Washington Fed. Savings,* 135 Idaho 518, 20 P.3d 702 (2001). In other words, the Mussells were entitled to make any uses of their property that did not unreasonably interfere with the District's enjoyment of its easement. *Id.* The District was entitled to relief upon a showing that the Mussells unreasonably interfered with its easement. *Id.* The district court found that Mr. Mussell's excavation of the slope along the bank of the Kennedy Lateral would have caused the Lateral to fail if it were filled with water. Such excavation clearly constituted an unreasonable interference with the District's easement. Thus, the district court did not err in finding that the Mussells were liable for damages.

## B. Did the District Court Apply the Proper Measure of Damages?

The measure of damages used by the district court was the reasonable cost of repairing the Kennedy Lateral. It found that the piping of the Lateral was the most expedient and cost effective manner to repair it so that it would transport water during the upcoming irrigation season. The Mussells contend that the district court used the wrong measure of damages. The measure of damages for injury to land as stated by this Court in *Young v. Extension Ditch Co.,* 13 Idaho 174, 182, 89 P. 296, 298 (1907), is as follows:

If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction, with legal interest thereon to the time of the trial. If the land is permanently injured, but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial. If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial.

In *Alesko v. Union Pacific Railroad Co.,* 62 Idaho 235, 241, 109 P.2d 874, 877 (1941), we added: "Even though the injury be only temporary if the cost of restoration exceeds the value of the premises in their original condition, or the diminution in market value the latter are the limits of recovery." In *Alesko* we also defined a temporary injury as follows: "[I]f the cause of the injury is abatable or preventable and the injury capable of rectification by reasonable restoration, i.e., not exceeding the damage to the property, the injury will be considered temporary and not permanent." 62 Idaho at 240, 109 P.2d at 876. The Mussells contend that the damages awarded by the district court exceed the diminution in value of the section of the Kennedy Lateral at issue.

■ The Mussells did not offer any evidence showing either the market value of the District's easement along the Mussells' property or the diminution in that value caused by the excavation. Because the goal of the

law of compensatory damages is reimbursement of the plaintiff for the actual loss suffered, the rule precluding recovery of restoration costs in excess of the diminution in value is not of invariable application. *Orndorff v. Christiana Cmty. Builders,* 217 Cal. App.3d 683, 266 Cal.Rptr. 193 (Ct.App.1990); *Board of County Comm'rs v. Slovek,* 723 P.2d 1309 (Colo.1986); 22 AM. JUR.2d *Damages* § 402 (1988).

■ The portion of the Kennedy Lateral at issue has value only because of its ability to transmit water as part of the District's larger water distribution system. The easement has no other purpose. The cost of repairing or restoring the Lateral is a more appropriate measure of damages than is the decrease in the market value of the easement. The easement across the Mussells' property would not normally be sold on the open market because it has no utility except as part of the larger water distribution system. Considering that it is part of a system that provides water to approximately 3,000 acres, most of which are downstream from this section of the Kennedy Lateral, awarding damages based upon the cost of restoring or repairing the Lateral so that it can transmit water would neither be a windfall to the District nor result in economic waste. Therefore, we hold that the district court did not err in utilizing the cost of repairing the Lateral as the measure of damages.

## C. Was the Award of Damages Supported by the Evidence?

■ The district court awarded the District damages in the sum of $127,245.41. The Mussells challenge various aspects of that damage award. The Mussells argue that they were only liable for the cost of restoring the Kennedy Lateral to its original condition as an old, earthen ditch and not for the cost of the piping, which they contend constituted an improvement from the Lateral's original condition. The District was entitled to recover from the Mussells the reasonable cost of restoring the Lateral so that it could transmit water. The Mussells did not show that it would be feasible simply to replace the dirt excavated by Mr. Mussell, and the trial testimony was that such repair would not be

feasible. The district court found that the proposed retaining wall "would continue to leave the Kennedy Lateral vulnerable to failure" and "[t]he piping of this section of Kennedy Lateral was the most expedient and cost effective fix for the loss of the subadjacent support." These findings were supported by substantial, competent evidence. Therefore, the district court did not err in awarding damages based upon the reasonable cost of piping the Kennedy Lateral.

■ The District used its own employees and equipment in repairing the Kennedy Lateral, although it did have to rent some equipment. The district court awarded as damages the labor cost of the District employees, including benefits, and the rental cost of the District equipment. The Mussells contend that they should not be liable for the cost of the District employees because they were full-time, salaried employees and the District did not incur any additional cost for their salaries and benefits. Likewise, they contend that they should not be liable for the rental value of the District equipment because the District did not actually incur the cost of renting such equipment. The Mussells cite no authority to support their argument.

The Mussells were liable for the reasonable cost of restoring the Kennedy Lateral. They were liable regardless of whether the District performed the repairs with its own employees and equipment or hired someone else to do the work. The district court found, "The use of NMID's [District's] personnel and equipment permitted the construction of the pipeline at a lesser total cost and in a shorter time frame than if NMID had attempted to use and [sic] outside contractor." The district court did not err in including as damages the reasonable value of the employee and equipment time used by the District to restore the Kennedy Lateral.

■ The Mussells challenge the district court's inclusion in the damage award of the cost of replacing an existing bridge with Class V pipe. The downstream end of the pipeline terminated at an existing bridge, which the District removed and replaced with Class V pipe that was then covered with dirt

to make a bridge. The district court found, "The existing bridge had to be re-constructed in order to handle the increased water speed and pressure caused by the piping of this section of the Kennedy Lateral." That finding was supported by substantial and competent evidence, and so the district court did not err in including that cost in the award of damages.

The Mussells contend that the district court should not have awarded damages for the entire length of the pipeline because it was longer than the length of the Kennedy Lateral impacted by Mr. Mussells' excavation. The District extended the upstream end of the pipeline about 130 to 140 feet beyond the Mussells' property line to connect with an existing concrete check box. Its water superintendent testified that the District did so because it was necessary to attach the upstream end of the pipeline to a structure that included a headwall and weed racks. He also stated that had the District constructed a separate structure for the upstream end of the pipeline, it would also have had to put in extensive riprap of rock material between that structure and the existing check box. The water superintendent opined that the cost of building a new structure for the upstream end of the pipeline would probably have been the same as the cost of extending the pipeline to the existing check box. The Mussells did not offer evidence to the contrary. The evidence was likewise uncontradicted that the pipeline was extended downstream to the bridge in order to use the bridge abutments to dissipate the additional energies generated from the increased velocity of water flowing through the pipeline rather than the earthen lateral. There was substantial and competent evidence supporting the district court's decision to award damages for the entire length of the pipeline.

The Mussells also challenge the district court's awarding as damages "the cost for fill and leveling of the St. Clair property." The Mussells' adjoining landowner Mr. St. Clair gave the District permission to install the pipeline along the northwest side of the Lateral channel, in essence enlarging the District's easement on his property. The Mussells argue that "the cost for fill and leveling

of the St. Clair property was not incurred as a result of any alleged injury, but was merely incurred as a result of the District's unilateral gratitude toward Mr. St. Clair for his cooperation in allowing the relocation of the ditch on his property." The Mussells do not cite anything in the record supporting that argument, however. They simply cite the testimony of the District's water superintendent that the District purchased fill from Mr. St. Clair that was used to backfill around structures, to fill in the ditch after the pipe was laid, and to fill depressions. It is not clear whether the Mussells are contending that the cost of putting fill dirt around the structures and covering the pipeline should not be awarded as damages or that there was some other filling and leveling done on the St. Clair property that should not have been awarded as damages. If it is the former, the district court did not err in including those costs as damages. If it is the latter, the Mussells have not pointed to sufficient facts in the record showing that the alleged error occurred.

The District claimed as damages a total of $18,680.08 for 1,207.5 hours of employee time spent restoring the Kennedy Lateral. During cross-examination of the District's water superintendent, the Mussells brought out that the District's claimed damages included 30 hours of time spent by three employees (Gary Butcher, Jerry Hilton, and Mike James) on February 14, 2001, even though their time sheets indicated that they worked that day both on the Kennedy Lateral and on another project. The total amount claimed as damages for ten hours of labor by each of these employees was $177.94 for Mr. Butcher, $127.21 for Mr. Hilton, and $127.21 for Mr. James. With respect to Mr. James, his time sheet indicates that during his ten-hour shift he hauled five loads to the Kennedy Lateral and three loads to the other project. Apportioning three-eights of his time to the other project, $47.70 of his labor cost should not have been awarded as damages. With respect to Messrs. Butcher and Hilton, there is nothing in the record indicating how their time could be apportioned between the Kennedy Lateral and the other project, and therefore none of their labor cost for work

done on February 14, 2001, should have been awarded as damages. There is nothing in the district court's findings of fact and conclusions of law indicating that it took these errors into account when awarding damages. Thus, the damages awarded must be reduced by a total of $352.85 ($177.94 + $127.21 + $47.70).

The damages awarded also included the cost of constructing a road along the pipeline. There had been a road along the northeast side of the Kennedy Lateral, but it did not extend the full length of that portion of the Lateral that was adjacent to the Mussells' property. There was access from a public highway to only one end of that road. Those using the road would have to turn around at its other end and drive back out to the highway. The pre-existing road had been formed simply by people driving along the side of the Kennedy Lateral. The District replaced that road with a wider, graveled road, both ends of which could be accessed from public highways. The District's ditch-rider and water superintendent both testified that the new road was of better quality than the previously-existing road. The district court did not address the cost of constructing this new road in its findings of fact, and the District has not pointed to anything in the record that would justify replacing the previously-existing road with one that was longer, wider, and of better quality. Therefore, on remand the district court will have to determine the District's labor, equipment, and material costs in constructing the new road and deduct that sum from the damages awarded. The district court may take such additional evidence as is necessary to make that determination.

## D. Was the District Entitled to Treble Damages Pursuant to Idaho Code § 42–902?

The District contends that it is entitled to treble damages pursuant to Idaho Code § 42–902, which provides:

Any person who, without the consent of the watermaster of the district, diverts any water from the ditch or channel where it was placed, or caused, or left to run by the watermaster or his deputies, or who shuts or opens any ditch, gate or dam with intent so to divert any water, and thereby deprive any person of the use of the same during any part of the time he is entitled to such use, or who, without the consent of the watermaster, cuts any ditch or the banks thereof, or breaks or destroys any gate or flume, is liable in a civil action to any person injured thereby in three times the actual damage sustained in consequence of any such wrongful act or acts.

The District argues that the southwest bank of the Kennedy Lateral included the entire area from the ditch channel to the bottom of the slope where it met the level of the adjoining land and that Mr. Mussell's conduct therefore constituted cutting the bank of the Kennedy Lateral. In denying the award of treble damages, the district court found that "Mussell's excavation did not cut the bank of the Kennedy Lateral."

When construing Idaho Code § 42–902, we must first decide whether its treble damage award is intended to be a penalty or compensation. *Barth v. Canyon County,* 128 Idaho 707, 918 P.2d 576 (1996). If it is intended to be a penalty, we strictly construe the statute's requirements; if it is intended to be compensatory, we do not. *Id.* In addition, if the treble damage award is intended as a penalty, the plaintiff must show that the defendant acted maliciously, wantonly, or oppressively (i.e., in bad faith) in order to recover treble damages. *Id.* If it is not, then no showing of "bad faith" is required to recover treble damages. *Id.* It is apparent on the face of the statute that the treble damage award permitted by Idaho Code § 42–902 is intended as a penalty. Therefore, the statute must be strictly construed.

The issue is what is meant by the phrase "cuts any ditch or the banks thereof." The conduct addressed in the first part of the statute is diverting water from a ditch or channel or shutting or opening any ditch, gate, or dam with the intent to divert water. The conduct addressed in the second part of the statute is cutting any ditch or the banks thereof, or breaking or destroying any gate or flume. Cutting a ditch or its bank typically refers to making a cut through the bank so that water will run out of the ditch. For

example, when reciting the facts in *Simonson v. Moon,* 72 Idaho 39, 41–42, 237 P.2d 93, 94 (1951), we stated, "The plaintiffs use the ditch from A around to D by cutting the banks, and by checks placed at various points between A and B. They also use the ditch B–E by use of cuts in the banks." Likewise, in *Tomchak v. Harris,* 54 Idaho 448, 449–50, 32 P.2d 1025, 1026 (1934), we stated, "There is no dispute however that in 1929 appellants sought to use water from the ditch in question, placing therein a check or checks so the water would flow out of the cuts in the bank." Again, in *Frost v. Penfold,* 44 Idaho 651, 655, 258 P. 534, 535 (1927), we stated, "In the spring of 1925, appellants cut the Upper Waddington ditch, and diverted water therefrom to his alfalfa field, filling up a portion of said Upper Waddington ditch, and asserted a right to use the water." Giving the statute a strict construction, we hold that the phrase "cuts any ditch or the banks thereof" means cutting through the bank of the ditch. The district court did not err in finding that Mr. Mussell did not cut the bank of the Kennedy Lateral.

### E. Is Either Party Entitled to an Award of Attorney Fees on Appeal?

■ Both the Mussells and the District request an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees can be awarded on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). Neither the appeal nor the cross-appeal was brought or defended frivolously, unreasonably, or without foundation. Therefore, we will not award attorney fees on appeal.

### IV. CONCLUSION

The judgment is affirmed as modified. On remand, the district court is directed to further modify the judgment as directed. Because both parties prevailed in part, we award no costs on appeal, nor do we award attorney fees to either party.

Chief Justice TROUT and Justices SCHROEDER, WALTERS, and KIDWELL concur.