FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHEN D. NEWMAN,
  *Petitioner-Appellant*,

v.

TIMOTHY WENGLER,
  *Respondent-Appellee*.

No. 13-36185

D.C. No.
1:11-cv-00520-LMB

OPINION

Appeal from the United States District Court
for the District of Idaho
Larry M. Boyle, Magistrate Judge, Presiding

Argued and Submitted
May 8, 2015—Seattle, Washington

Filed June 16, 2015

Before: J. Clifford Wallace, Andrew J. Kleinfeld,
and Ronald M. Gould, Circuit Judges.

Per Curiam Opinion

## SUMMARY*

### Habeas Corpus

The panel affirmed the district court's denial of Idaho state prisoner Stephen Newman's habeas corpus petition challenging his conviction for attempted rape.

The panel held that the *Stone v. Powell* doctrine – where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial – survived the passage of the Antiterrorism and Effective Death Penalty Act.

The panel held that Newman had a full and fair opportunity in state court to litigate his Fourth Amendment claims, and that the *Stone v. Powell* doctrine therefore bars consideration of his Fourth Amendment claim in a federal habeas corpus petition.

### COUNSEL

Dennis P. Riordan (argued), Donald M. Horgan, and Gary K. Dubcoff, Riordan & Horgan, San Francisco, California, for Petitioner-Appellant.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

L. LaMont Anderson (argued), Deputy Attorney General, and Lawrence G. Wasden, Attorney General, Boise, Idaho, for Respondent-Appellee.

## OPINION

PER CURIAM:

In 2008, Stephen Newman was convicted by a jury of attempted rape and sentenced to a unified term of 15 years with the first 7 ½ fixed. The Idaho Court of Appeals affirmed his conviction on direct appeal, and denied his petition for rehearing. The Idaho Supreme Court also denied his petition for review. Newman filed a federal habeas petition claiming that the Idaho trial court violated his Fourth and Fourteenth Amendment right to be free from unlawful searches and seizures. The State argued that Newman's claim was barred by the Supreme Court's holding in *Stone v. Powell*, 428 U.S. 465 (1976). The magistrate judge[1] agreed and denied the petition. The Court held in *Stone* that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnote omitted). Newman now appeals and argues that the *Stone* doctrine did not survive the passage of the Antiterrorism Effective Death Penalty Act ("AEDPA"), or in the alternative, that he did not receive a full and fair opportunity to litigate his Fourth Amendment claims in the Idaho state courts.

---

[1] Both parties consented to adjudication by a magistrate judge.

We have jurisdiction pursuant to 28 U.S.C. § 2253. Reviewing the magistrate judge's decision de novo, *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004), we affirm. The question of whether the doctrine of *Stone v. Powell* survives the passage of AEDPA is a question of first impression in our circuit. We hold that it does, and that its application bars Newman's claim.

Newman argues that the plain language of 28 U.S.C. § 2254(d) abrogates *Stone*. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Newman's sole support for this argument is *Carlson v. Ferguson*, 9 F. Supp. 2d 654 (S.D.W. Va. 1998) ("*Carlson II*"), a district court case from West Virginia. In *Carlson II*, the district court held that *Stone* merged with AEDPA and "that the phrase 'any claim that was adjudicated on the merits' as drafted in section 2254(d) includes claims

premised under the Fourth Amendment's exclusionary rule." *Id.* at 657. The district court in *Carlson II* held that "AEDPA's two-tiered analytical approach replaces [*Stone*'s] full and fair opportunity test." *Id.* at 656. This approach liberalizes the consideration of certain Fourth Amendment claims in a habeas petition.

Under *Stone*, exclusionary rule claims were barred if the petitioner had a full and fair opportunity to litigate them below whether or not they were actually adjudicated on the merits and whether or not they involved an unreasonable application of Supreme Court law or unreasonable determination of the facts. "*Stone* reversed both the eighth and ninth circuits, not because the Justices thought that the state courts had handled the fourth amendment issues correctly, but because error on a fourth amendment issue does not support a writ of habeas corpus." *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002). We are not persuaded that the passage of AEDPA abrogated this doctrine and eliminated other existing limitations on habeas relief sub silencio. This interpretation is not compelled by the text, has not been adopted by any other circuit to consider the issue, and requires us to engage in anticipatory overruling of Supreme Court precedent.

The language of section 2254(d) is not in tension with *Stone* because it does not imply a negative pregnant.**[2]** There is no implication in § 2254(d) that because the statute commands us *not* to grant a petition unless certain conditions are met, those are the *only* conditions under which we could

---

**[2]** A negative pregnant is "[a] denial implying its affirmative opposite by seeming to deny only a qualification of the allegation and not the allegation itself." *Black's Law Dictionary* 1132 (9th ed. 2009).

deny a petition. The Supreme Court has held that the text of AEDPA established "a precondition to the grant of habeas relief . . . not an entitlement to it," *Fry v. Pliler*, 551 U.S. 112, 119 (2007), and that "[i]t is . . . well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas," *Williams v. Taylor*, 529 U.S. 362, 375 (2000). In *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008), the Supreme Court explained that although Title 28 gives federal courts the power to grant writs of habeas corpus, it also "leaves unresolved many important questions about the scope of available relief." *Id.* The Court "has interpreted that congressional silence—along with the statute's command to dispose of habeas petitions 'as law and justice require,'—as an authorization to adjust the scope of the writ in accordance with equitable and prudential considerations." *Id.* (citation omitted) (quoting 28 U.S.C. § 2243). The *Stone* doctrine is one of a number of such prudential considerations.[3]

No other circuit that has considered this issue has determined that AEDPA abrogated *Stone*. The Tenth and the Seventh Circuits have both held that *Stone* survives the passage of AEDPA. In *Herrera v. Lemaster*, 225 F.3d 1176 (10th Cir. 2000), the Tenth Circuit rejected *Carlson II* because it was not persuaded "that by enacting AEDPA Congress intended to expand in any way a habeas petitioner's right to overturn a state court decision." *Id.* at 1178 n.2. The Supreme Court has "frequent[ly] recogni[zed] that AEDPA

---

[3] *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (harmless-error standard); *McCleskey v. Zant*, 499 U.S. 467 (1991) (abuse-of-the-writ bar to relief); *Wainwright v. Sykes*, 433 U.S. 72 (1977) (procedural default).

limited rather than expanded the availability of habeas relief." *Fry*, 551 U.S. at 119 (citing *Williams*, 529 U.S. at 412).

*Stone* and AEDPA both narrowed the availability of habeas relief in exclusionary rule cases because, on collateral review, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Stone*, 428 U.S. at 494–95. The Court observed that "in the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration." *Id.* at 491 n.31. The Court concluded that this was because the exclusionary rule is "not a personal constitutional right," but is instead a way to deter police misconduct. *Id.* at 486. The Seventh Circuit, in determining that Stone survived the passage of AEDPA, agreed:

> What [a petitioner] needs in order to prevail on a collateral attack is not simply a holding that the directive was invalid, but a conclusion that this error requires application of the exclusionary rule. And *Stone v. Powell* holds that, although both state and federal courts must apply the exclusionary rule at trial and on direct appeal, it is inappropriate to use the exclusionary rule as the basis of collateral relief because it would not appreciably augment the deterrence of improper police conduct.

*Hampton*, 296 F.3d at 562 (citation omitted).

In a pre-AEDPA case, *Woolery v. Arave*, 8 F.3d 1325 (9th Cir. 1993), we agreed that "enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and the educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism." *Id.* at 1325. We hold that there is not, in AEDPA, an implied broadening of the right to habeas relief with respect to the exclusionary rule.

Finally, we hold that *Stone* survives because we do not engage in anticipatory overruling of Supreme Court precedent. The Supreme Court has made clear that it retains "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). AEDPA "does not authorize this court to overrule Supreme Court precedent 'even where subsequent decisions or factual developments may appear to have significantly undermined the rationale for [an] earlier holding.'" *United States v. Mitchell*, 502 F.3d 931, 982 (9th Cir. 2007) (quoting *Roper v. Simmons*, 543 U.S. 551, 594 (2005)) (O'Connor, J., dissenting) (alteration in the original).

Since we hold that *Stone* is still good law, we now analyze under *Stone* whether we can consider Newman's Fourth Amendment claim. We are barred by the *Stone* doctrine from considering Newman's claim if he had a "full and fair opportunity" to litigate his Fourth Amendment claims in the state courts. "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

Newman had three hearings at the trial court level in his attempt to suppress evidence seized from his SUV. He does not argue that this was not enough for a full and fair opportunity to litigate his Fourth Amendment claims. Instead, he contends that he was "ambushed" by the state court of appeals when it decided his Fourth Amendment claim on a different ground than the trial court. However, it is well settled under Idaho law that "[w]here the lower court reaches the correct result by an erroneous theory, [an appellate court] will affirm the order on the correct theory." *State v. Russo*, 336 P.3d 232, 240 (Idaho 2014) (quoting *Nampa & Meridian Irr. Dist. v. Mussell*, 72 P.3d 868, 873 (Idaho 2003) (internal quotation marks omitted). Furthermore, Newman was aware that the State would argue a new theory on appeal when he received its brief. Newman addressed the State's arguments in his reply brief, in his brief when he petitioned for rehearing by the state court of appeals, and in his petition before the Idaho Supreme Court. This was a full and fair opportunity.

Newman also argues that his full and fair opportunity was compromised because the state trial court made insufficient factual findings for the state court of appeals to decide on a different ground. He argues that his case should have been remanded for additional fact finding. This is not our standard. "All *Stone v. Powell* requires is the initial opportunity for a fair hearing. Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action, including whether or not the trial court has made express findings of fact." *Caldwell v. Cupp*, 781 F.2d 714, 714 (9th Cir. 1986) (internal quotation marks and citations omitted). Newman does not argue that his initial hearings were not fair, but that they were wrongly decided. "As in *Stone* itself, all

we have is a claim of error—and that is not enough to support collateral relief based on the exclusionary rule." *Hampton*, 296 F.3d at 565.

The *Stone v. Powell* doctrine survives the passage of AEDPA and therefore bars Newman's claim because he had a full and fair opportunity in state court to litigate his Fourth Amendment claims.

**AFFIRMED.**