# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38645

KEYBANK NATIONAL ASSOCIATION, a national banking association,

    Plaintiff-Respondent,

v.

PAL I, LLC, an Idaho limited liability company,

    Defendant-Appellant,

and

BRIAN CHRISTENSEN, an individual; L.A. PARKINSON, an individual; BARNEY DAIRY, INC.; D.J. BARNEY, an individual; WILLIAM DAVIS, an individual; LOIS DAVIS, an individual; DELL RAY BARNEY, an individual; and DELL J. BARNEY, an individual, dba BARNEY TOWING & RECOVERY,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Idaho Falls, August 2013 Term

2013 Opinion No. 103

Filed: October 3, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Hon. Gregory W. Moeller, District Judge.

The judgment of the district court is <u>affirmed</u>.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for appellant. B.J. Driscoll argued.

Givens Pursley, LLP, Boise, for respondent. Amber N. Dina argued.

_____

J. JONES, Justice.

    This case involves a judgment creditor, PAL I, LLC, that levied and executed upon

1

collateral in which KeyBank had a perfected security interest. PAL argued that because KeyBank did not file a third-party claim to the collateral in accordance with I.C. § 11-203, it waived its interest in the collateral. The district court held that a perfected security interest survives a creditor's failure to comply with I.C. § 11-203, that KeyBank's security interest extended to the proceeds PAL realized from the sheriff's sale of the collateral, and that KeyBank was entitled to judgment against PAL in that amount. PAL appealed to this Court and we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

KeyBank made two separate loans to Tri-Steel. The first loan in the amount of $150,000 was made on April 16, 2007. Tri-Steel executed a security agreement, pledging as collateral for the loan all of its inventory, equipment, accounts, attachments, accessories, tools, parts, and supplies. On April 23, 2007, KeyBank filed a UCC financing statement, perfecting its security interest in the collateral. On December 5, 2008, KeyBank loaned Tri-Steel an additional $150,000. Again, Tri-Steel executed a security agreement which listed the same collateral as security. On February 23, 2010, KeyBank filed a UCC financing statement with the Idaho Secretary of State for the second loan, perfecting KeyBank's security interest in the collateral. Subsequently, Tri-Steel breached the terms of the promissory notes and security agreements with KeyBank, and KeyBank filed suit against Tri-Steel to recover the amounts owing.

PAL also filed suit against Tri-Steel, and on April 2, 2010, it recovered a judgment against Tri-Steel for $20,224.00. On April 5, 2010, PAL obtained a writ of execution against property owned by Tri-Steel—specifically catwalks/scaffolding, forklifts, screw guns, electrical cords, office desk/chairs, and computers. The Madison County Sheriff mailed third-party claim of exemption packets to KeyBank's Rexburg and Boise offices on April 26, 2010. KeyBank never returned the third-party claim forms. However, on April 28, 2010, KeyBank did mail a letter to PAL's counsel, informing him that KeyBank had a security interest in the levied property. The letter states in relevant part:

> It has come to [KeyBank's] attention that [PAL has] caused the Madison County Sheriff to serve a Writ of Execution and a Notice of Attachment [on] property belonging to Tri-Steel …. As you can see from the enclosed UCC filing, KeyBank has perfected its security interest in all of this collateral …. I am having a difficult time understanding why you would instruct the Sheriff to seize property that clearly is subject to another creditor's secured interest.

On June 1, 2010, a default judgment was entered against Tri-Steel in KeyBank's lawsuit,

2

adjudging Tri-Steel liable to KeyBank in the amount of $296,500.74, plus interest and attorney fees. On June 4, 2010, KeyBank sent the Madison County Sheriff a writ of execution instructing the Sheriff to seize the KeyBank collateral.

KeyBank continued to assert its claim to the collateral upon which PAL had levied. In a letter dated June 8, 2010, KeyBank asked the Madison County Sheriff to postpone PAL's sale of the Tri-Steel property because KeyBank had a perfected security interest in all of it. In the event the Sheriff proceeded with the sale, KeyBank requested that the proceeds of the sale be held in a trust account for KeyBank, given that its security interest extended to the proceeds of any sale. Despite KeyBank's communications, the sheriff's sale was not postponed and the disputed collateral was sold for $16,884.41 on June 9, 2010. PAL never transferred any of the sale proceeds to KeyBank.

On August 16, 2010, KeyBank initiated the current action against PAL. KeyBank's Complaint states that "[a]s a secured creditor with priority over PAL I, a mere unsecured judgment creditor of Tri-Steel, KeyBank has a legal right to all resulting proceeds from the Auction of the KeyBank Collateral." PAL answered KeyBank's Complaint on September 27, 2010. Cross motions for summary judgment were submitted by the parties. Following a hearing to address the motions, the district court issued its Memorandum Decision denying PAL's motion for summary judgment and granting KeyBank's motion. On January 3, 2011, the district court entered judgment in favor of KeyBank in the amount of $16,844.41.

Following the district court's entry of judgment, PAL filed a motion for reconsideration, arguing that the district court's Memorandum Decision was contrary to established law and the rules of statutory construction. Following a hearing to address PAL's motion for reconsideration, the district court issued its Memorandum Decision on Reconsideration denying PAL's motion. PAL filed a timely appeal to this Court.

On March 23, 2011, PAL advised KeyBank that it would not be posting a surety bond or other security to stay execution of KeyBank's judgment. On May 19, 2011, KeyBank delivered a writ of execution to the Bonneville County Sheriff, directing the Sheriff to satisfy KeyBank's judgment "out of the personal property of [PAL]." An accompanying letter of instructions directed the Sheriff to attach and levy upon the following property: "all goods, chattels, moneys and other property, both real and personal . . . specifically including but not limited to Defendant PAL I, LLC's claim, cause of action, and appeal rights associated with [this case]." PAL filed a claim of

3

exemption under I.C. § 11-203, alleging numerous deficiencies in KeyBank's execution. In response, KeyBank filed a motion contesting PAL's claim of exemption. On August 31, 2011, the district court granted KeyBank's motion contesting PAL's claim of exemption and authorized KeyBank to proceed with collection of its judgment. The district court issued an additional judgment awarding KeyBank attorney fees and costs in the amount of $7,004.83 on November 4, 2011. PAL again filed a claim of exemption and sought a stay of execution of the judgment for fees and costs. The district court ultimately ordered that PAL post a supersedeas bond in order to stay execution with respect to that judgment. This Court entered an order on February 13, 2012, permitting the bonding issue to be raised in supplemental briefing.

## II.

## ISSUES ON APPEAL

I.      Did the district court err in holding that KeyBank's perfected security interest survived even though KeyBank failed to file a third-party claim under I.C. § 11-203?

II.     Does the doctrine of quasi-estoppel bar KeyBank from recovering?

III.    Did the district court err in holding that its interpretation of I.C. § 11-203 did not violate PAL's equal protection rights?

IV.     Did the district court err in holding that PAL was required to comply with I.C. § 8-506A?

V.      Did the district court err by requiring PAL to post a bond to stay execution of KeyBank's judgment for attorney fees and costs?[1]

VI.     Is either party entitled to attorney fees on appeal?

## III.

## ANALYSIS

### A.      Standard of Review.

In an appeal from summary judgment, "this Court employs the same standard as used by the district judge originally ruling on the motion." *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "The interpretation of a statute is a question of law over which this Court exercises free review." *Carrier v. Lake Pend Oreille Sch. Dist.*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006).

---

[1] The appeal deals only with the fee and cost judgment. PAL apparently posted a supersedeas bond to stay the initial judgment.

4

**B. KeyBank did not forfeit its security interest by virtue of failing to file a third-party claim under I.C. § 11-203.**

The district court held that a perfected security interest survives a creditor's failure to comply with I.C. § 11-203. Idaho Code § 11-203 provides in relevant part:

> The following procedures shall apply . . . to any claim by a third party that property levied upon is his property or that he has a security interest therein. . . . A third party claimant shall prepare a written claim setting forth the grounds upon which he claims the property, and in the case of a secured party, also stating the dollar amount of the claim. A . . . third party claim may be filed only if property has been levied upon.
>
> (a) The . . . third party claim shall be delivered or mailed to the sheriff within fourteen (14) days after the date the sheriff hand delivers or mails the documents required to be served upon the . . . third parties under section 8-507A, Idaho Code.

In reaching its conclusion, the district court looked to Idaho's Uniform Commercial Code, specifically I.C. § 28-9-315, to determine how a creditor's security interest in collateral might be impacted by the creditor's failure to comply with I.C. § 11-203.

Idaho Code § 28-9-315 provides: "Except as otherwise provided in this chapter . . . [a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien." I.C. § 28-9-315(a)(1). PAL argued to the district court that allowing a secured creditor to maintain its secured status in collateral, even though the creditor failed to comply with I.C. § 11-203, would render the statute meaningless. In response, the district court noted "[a]t first glance, PAL's reliance on the 11-203 statute appears reasonable because the statute provides that its procedures *shall* apply." However, the court determined that the express language in Section 28-9-315(a)(1) defeated PAL's contention. Based on that language, the court concluded that I.C § 28-9-315 "clearly implies that a perfected security interest survives the failure to comply with I.C. § 11-203." The court stated, "While PAL may argue that this ruling now renders portions of I.C. § 11-203 meaningless, the Court respectfully disagrees. . . . I.C. § 11-203 was not intended to set forth the rights of creditors." Instead, the district court concluded that "it is clear from the statutory scheme that I.C. § 11-203 was primarily intended to protect debtors and provide a means for secured parties to alert other creditors of their interests." Additionally, the court concluded that because I.C. § 11-203 did not set forth any consequences for failing to comply with the statute's terms, failure to comply did not affect the validity of a perfected security interest.

5

On appeal, PAL argues that the district court's application of I.C. § 28-9-315 was in error because: (1) a "sale by levy under Section 11-203 is beyond the scope of Section 28-9-315(a)(1)"; (2) it rendered I.C. § 11-203 meaningless; (3) KeyBank authorized the sale of the Tri-Steel collateral; and (4) I.C. § 11-203 should have been applied since it is both more specific and newer than I.C. § 28-9-315.

PAL first argues that a sale by levy under I.C. § 11-203 is beyond the scope of I.C. § 28-9-315(a)(1). In support of this argument, PAL cites I.C. § 28-9-109(a)(1), which provides that the provisions of Chapter 9, Title 28 of the Idaho Code apply to transactions that create a security interest in personal property by contract. PAL then goes on to say "the levy on Tri-Steel's property is not a 'transaction' that 'creates' a security interest." It is unclear whether PAL is referring to its levy upon the collateral or KeyBank's subsequent levy on the collateral. Regardless, that is beside the point. KeyBank's security interest was not created and perfected by its levy on the property but, rather, by its security agreements and filings with the Secretary of State. And, I.C. § 28-9-315(a)(1) specifically states that a security interest, once perfected, continues in the collateral notwithstanding sale and there is absolutely nothing in the statute that exempts a sheriff's sale made pursuant to Title 11. It is obvious that KeyBank's perfected security interests are governed by the provisions of Chapter 9, Title 28.

PAL further contends that "Chapter 9 does not apply because of I.C. § 28-9-109(c)(2). That provision states that Chapter 9 does not apply "to the extent that . . . [a]nother statute of this state expressly governs the creation, perfection, priority or enforcement of a security interest created by this state." PAL contends that Section 11-203 is another such statute. This contention is without merit because Section 11-203 says absolutely nothing about the creation, perfection, priority or enforcement of a security interest. All of those matters are clearly encompassed within Chapter 9, Title 28.

PAL next argues that the district court's conclusion—that a perfected security interest survives a secured creditor's failure to comply with I.C. § 11-203—renders the statute meaningless. First, PAL asserts that as a "third party" with a security interest in the Tri-Steel collateral, the provisions of I.C. § 11-203 applied to KeyBank. Second, PAL argues that because I.C. § 11-203 states that "the following procedures shall apply," it was mandatory for KeyBank to file a claim of exemption with the sheriff in order to maintain its secured status. Because I.C. §11-203 applied and required KeyBank to act, PAL argues the court's interpretation renders the

statute meaningless. Specifically, PAL argues that "by interpreting Section 28-9-315(a)(1) to preserve KeyBank's security interest in the levied property despite KeyBank's failure to comply with Section 11-203, the district court necessarily concluded that the detailed statutory procedures of section 11-203 are nothing but a legislative exercise in futility." In sum, PAL argues that the district court's ruling undermines the purpose of I.C. § 11-203.

In response, KeyBank argues that the district court's interpretation of I.C. § 11-203 did not render it meaningless because I.C. § 11-203 is primarily intended to protect judgment debtors, not to affect the rights of secured creditors. Like the district court, KeyBank relies on I.C. § 28-9-315 to support its argument that non-compliance with I.C. § 11-203 does not nullify a secured party's perfected security interest.

The district court's interpretation of I.C § 11-203—allowing secured creditors to retain their security interest without complying with the terms of the statute—does not render the statute meaningless because the statute's primary purpose is to set out procedures and responsibilities of the sheriff, not to affect or extinguish creditor's interests. As the district court noted, I.C. § 11-203 provides absolutely no adverse effects for perfected secured creditors who fail to file a third-party claim under I.C. § 11-203. Rather, failure to timely file a third-party claim with the sheriff only allows the sheriff to "sell or deliver the property levied upon," notwithstanding the fact that a third-party may have a perfected security interest in the collateral. *See* I.C. §11-203(c). Additionally, because KeyBank's security interest in the Tri-Steel collateral was perfected, its security interest in the proceeds[2] of the sheriff's sale was also perfected. *See* I.C. § 28-9-315(c) ("A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.").

The first sentence of I.C. § 11-203 is telling. It states "[t]he following *procedures* shall apply . . . to any claim by a third party that property levied upon is his property or that he has a security interest therein." I.C. § 11-203 (emphasis added). The provision then goes on to list the specific procedures for filing a third-party claim, the timeline for filing, the timeline for contesting the claim, the timeline for holding a hearing to address the third-party claim, and ultimately when the sheriff may sell the levied property. I.C. § 11-203(a)−(c). The plain language

---

[2] "'Proceeds' means . . . whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral." I.C. § 28-9-102(64)(a).

of I.C. § 11-203, coupled with the clear omission of any repercussions for failing to file a third-party claim, indicates that the statute was designed to lay out procedures for selling levied property, not to affect the rights of secured creditors.

PAL's primary contention is that the two statutes are inconsistent but that is simply not the case. Title 11 of the Idaho Code sets out the procedures for enforcement of judgments in civil actions. It provides the procedure for the sheriff and litigants to follow in the processing of execution proceedings. Section 11-203 deals with claims for exemption, primarily directing the sheriff how to handle the same. The statute contains no provision for the creation or destruction of security interests. On the other hand, Chapter 9 of Title 28 sets out how to obtain and maintain a security interest. Idaho Code § 28-9-315 specifies a secured party's rights upon disposition of the collateral. A secured party would be well advised to file a third-party claim pursuant to I.C. § 11-203 in order to protect its interests. A forced sheriff's sale may not produce the highest price for the secured party's collateral. And, like here, the secured party may have to engage in litigation to recover the proceeds of a sheriff's sale, after having failed to file a third-party claim. However, the failure of the secured party to exercise its rights under I.C. § 11-203 does not, in itself, result in a forfeiture or waiver of a security interest. Based on its contention that the two statutes are inconsistent, PAL argues that Section 11-203 takes precedence over Section 28-9-315 because the former is more specific and later enacted. We need not address these contentions because the predicate—that the two statutes are inconsistent—is faulty.

Under I.C. § 28-9-315 a security interest "continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof *unless the secured party authorized the disposition free of the security interest*." I.C. § 28-9-315(a)(1) (emphasis added). PAL argues that "KeyBank authorized the sale of the levied property 'free of the security interest' as a matter of law when KeyBank failed to file a claim with the sheriff under Section 11-203." PAL contends that KeyBank's failure to timely assert its interest in the Tri-Steel collateral "constitutes authorization by operation of law." In response, KeyBank argues that it did not authorize PAL to sell the Tri-Steel collateral free of its security interest.

It is obvious that KeyBank did not authorize the disposition of the Tri-Steel collateral free of its valid and perfected security interest. Rather, the opposite is true. KeyBank sent letters to PAL's counsel and the Madison County Sheriff informing them of KeyBank's secured interest in the Tri-Steel property. KeyBank also asked the Madison County Sheriff to postpone PAL's sale of

8

the Tri-Steel property because KeyBank had a perfected security interest in the collateral. Furthermore, PAL's argument that failure to comply with I.C. § 11-203 constitutes authorization as a matter of law is unsupported by the text of the statute.

### C.    The doctrine of quasi-estoppel does not bar KeyBank from recovering.

PAL next invokes the equitable doctrine of quasi-estoppel to negate KeyBank's perfected security interest in the Tri-Steel collateral. PAL cites to *KTVB, Inc. v. Boise City*, wherein the Court stated "[t]he requirements for proper application of quasi estoppel are, then, that the person against whom it is sought to be applied has previously taken an inconsistent position, with knowledge of the facts and his rights, to the detriment of the person seeking application of the doctrine." 94 Idaho 279, 282, 486 P.2d 992, 995 (1971). PAL argues that KeyBank took an inconsistent position, as a matter of law, by failing to claim a security interest in the Tri-Steel collateral as required by I.C. § 11-203. Further, PAL claims that it suffered a detriment due to KeyBank's inconsistent position by incurring sheriff's fees, storage costs, and attorney's fees and by levying on the property without knowing the amount of KeyBank's claim—information that would have been disclosed if KeyBank had filed a third-party claim. In addition to PAL's detriment, PAL argues that the district court's holding provided KeyBank with the advantage of forcing PAL to assume all the risk of sale and allowing KeyBank to wait and see if the sale generated enough value to collect against the sale proceeds.

KeyBank argues that quasi-estoppel is not applicable in this case because KeyBank has consistently asserted its interest as a secured creditor with superior rights in the Tri-Steel collateral. KeyBank claims that it voiced its interest through multiple letters to PAL's counsel and the Madison County Sheriff. It says that after all the notice and consistent communication indicating KeyBank's interest, "it would be illogical to hold KeyBank equitably estopped from asserting its interest in the Tri-Steel collateral." Further, KeyBank contends that any detriment suffered by PAL was due to its own actions because PAL proceeded with the sale and incurred expenses despite having notice that KeyBank held a security interest in the property, including notice of KeyBank's UCC financing statements. Lastly, KeyBank argues that the district court's holding does not provide non-complying secured creditors any advantage due to the costs of bringing a suit to protect their rights in their collateral.

The doctrine of quasi-estoppel "prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken." *C & G, Inc. v. Canyon*

9

*Highway Dist. No. 4,* 139 Idaho 140, 144, 75 P.3d 194, 198 (2003). "The doctrine is designed to prevent a party from reaping an unconscionable advantage, or from imposing an unconscionable disadvantage upon another, by asserting to the pleader's disadvantage a right that is inconsistent with one in which he accepted a benefit." *Schiewe v. Farwell*, 125 Idaho 46, 52, 867 P.2d 920, 926 (1993). Quasi-estoppel applies when:

> (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006). "Quasi-estoppel is essentially a last-gasp theory under which a defendant who can point to no specific detrimental reliance due to plaintiffs' conduct may still assert that plaintiffs are estopped from asserting allegedly contrary positions where it would be unconscionable for them to do so." *Schoonover v. Bonner Cnty.,* 113 Idaho 916, 919, 750 P.2d 95, 98 (1988)

In this case, PAL's quasi-estoppel argument does not make it past the first element because the alleged offending party, KeyBank, has maintained the same position by consistently and vocally asserting its security interest in the Tri-Steel collateral. First, on April 28, 2010, KeyBank mailed a written letter to PAL's counsel informing him that KeyBank had a secured interest in the levied property. Additionally, in a letter dated June 8, 2010, KeyBank asked the Madison County Sheriff and PAL to postpone the sale of the Tri-Steel property because KeyBank had a perfected security interest in it. Further, KeyBank asked that if the Sheriff proceeded with the sale, the proceeds of the sale be held in a trust account for KeyBank, given that KeyBank's security interest extended to the proceeds of the sale. However, despite KeyBank's communications, PAL proceeded with the sheriff's sale.

Throughout the course of this litigation and during PAL's execution proceedings against Tri-Steel, KeyBank has consistently maintained a single position—that it has a perfected secured interest in the Tri-Steel collateral and that its rights are senior to PAL's. Because KeyBank has not asserted any inconsistent position, quasi-estoppel does not have any application here.

PAL urges the Court to make a distinction between asserting one's position in fact and in law. Specifically, PAL argues that KeyBank's letters and telephone calls asserting its interest in the property are irrelevant because I.C. § 11-203 required them to assert their interest by filing a

third-party claim, which they did not do. This argument lacks merit because, as addressed above, I.C. § 11-203 does not require as a matter of law that a secured creditor file a third-party claim in order to preserve its secured interest. It merely requires the secured third-party to file a claim in order to prevent the sheriff from proceeding to sell or deliver the levied property. *See* I.C. § 11-203(c).

**D.      The district court's construction of I.C. § 11-203 does not violate the Equal Protection Clause of the Fourteenth Amendment.**

PAL argues that "the district court interpreted Section 11-203 so as to render it unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States." Specifically, PAL contends that the district court's construction of I.C. §11-203 gives secured parties greater rights in levied property than the owners of levied property. PAL argues the court did this when it allowed KeyBank to maintain its secured interest in the collateral although it failed to comply with I.C. § 11-203. The contention appears to be that a judgment debtor is deprived of equal protection because the judgment debtor "must file a claim of exemption to maintain his interest in the property."

In response, KeyBank argues that the district court's interpretation of I.C. § 11-203 did not violate the Equal Protection Clause of the Fourteenth Amendment. In making its argument, KeyBank relies on *In re Bermudes*, where this Court stated that "[e]qual protection embraces the principle that all persons in like circumstances should receive the same benefits and burdens of the law." 141 Idaho 157, 160, 106 P.3d 1123, 1126 (2005). KeyBank asserts that PAL's equal protection rights were not violated in this case because perfected secured creditors, judgment creditors, and judgment debtors are "different classes of persons and therefore the Fourteenth Amendment does not mandate that Idaho Law provide them 'equal protection.'"

PAL's argument is wholly without merit. Judgment debtors and secured parties holding an interest in their property are entirely different classes of people. "The Supreme Court of the United States has consistently held that the Equal Protection Clause does not prohibit states from treating different classes of people differently." *Credit Bureau of E. Idaho, Inc. v. Lecheminant*, 149 Idaho 467, 470, 235 P.3d 1188, 1191 (2010). Just because a judgment debtor must file a claim of exemption to protect his property rights, it does not follow that a secured party must do the same. For one thing, the judgment debtor does not have rights similar to those statutorily provided for a secured party under Chapter 9, Title 28 of the Idaho Code. And, despite PAL's apparent concern for the interests of judgment debtors, PAL does not explain how it has the requisite standing to

advance their interests in this litigation.

**E.      PAL's assertion of error with regard to I.C. § 8-506A is moot.**

After holding that non-compliance with I.C. § 11-203 does not affect a secured creditor's interest in the subject collateral, the district court alternately held that PAL's execution sale should be set aside because PAL failed to comply with the terms of I.C. §8-506A. PAL claims error in this regard. However, the district court's ruling was simply an alternate ground for granting relief to KeyBank. How the district court ruled in applying I.C. § 8-506A is of no consequence since we uphold the determination that KeyBank's security interests survived the sheriff's sale and continued into the proceeds of that sale.

**F.      Did the district court err in requiring PAL to post a supersedeas bond to stay execution on KeyBank's Judgment for Attorney Fees and Costs?**

After the district court granted judgment to KeyBank for its attorney fees and costs, KeyBank sought to execute on that judgment. PAL filed a claim of exemption under I.C. § 11-203 and moved the district court to stay execution on that judgment. The district court initially granted PAL's motion for a stay on the fee and costs judgment. KeyBank subsequently filed a motion asking the court to reconsider its order staying execution on that judgment. The district court granted KeyBank's motion to reconsider the stay of execution. The court's order lifting the stay provided: "[s]hould [PAL] seek to avoid execution of the November 4, 2011, Judgment for Attorney's Fees and Costs, [PAL] must post the appropriate bond in accordance with Rule 13(b)(15) of the Idaho Appellate Rules." On appeal, PAL argues that Idaho law does not require a party to post security to stay execution of a judgment for fees and costs. PAL's argument is premised on: (1) I.A.R. 16(a), which says that "[n]o undertaking on appeal for costs shall be required," and (2) I.R.C.P. 54(e)(5), which states that "[a]ttorney fees, when allowable by statute or contract, shall be deemed as costs in an action and processed in the same manner as costs." PAL contends that, read together, Rule 16(a) and Rule 54(e)(5) do not require security on appeal for costs, which include attorney fees.

In response, KeyBank argues that when I.A.R. 16 is read as a whole, its plain language directly refutes PAL's contention that no security bond is required to stay execution of a judgment for attorney fees on appeal. KeyBank, relying on BLACK'S LAW DICTIONARY 170 (7th ed. 1999), asserts that "Cost Bond" in I.A.R. 16(a) references a "bond given by a litigant to secure the payment of court costs," while "Supersedeas Bond," referenced in I.A.R. 16(b), is an "appellant's bond to stay execution on a judgment during the pendency of the appeal." In sum, KeyBank argues

12

that the stay of any monetary judgment awarded by the trial court requires the posting of a supersedeas bond, but no bond is needed to cover the anticipated costs on appeal.

In *BECO Const. Co., Inc. v. J-U-B Engineers Inc.*, this Court provided some support for PAL's argument in a gratuitous footnote: "Although neither party has addressed the issue, it is clear that BECO need not have previously posted the cash bond. Rule 16(a), I.A.R., provides that '[n]o undertaking on appeal for costs shall be required.' Rule 54(e)(5), I.R.C.P., provides that '[a]ttorney fees, when allowable by statute or contract, shall be deemed as costs in an action. . . .'" 149 Idaho 294, 299 n.1, 233 P.3d 1216, 1221 n.1 (2010). The footnote overlooked our previous holding in *Student Loan Fund of Idaho, Inc. v. Duerner*, where the Court dealt with this specific issue. We stated: "The only issue on appeal is whether I.A.R. 13(b)(15) requires costs and attorney's fees to be included in the 'amount of the judgment' for the purpose of determining the [supersedeas] bond." 131 Idaho 45, 55, 951 P.2d 1272, 1282 (1997). The Court continued:

> In calculating the required bond for staying execution of a judgment pending appeal, the trial court should look to the amount of the judgment as of the time the notice of appeal was filed because that is the time at which the bond is set. Here, the judgment as of the time S.L.F.I. filed its notice of appeal included an award of costs and attorney's fees. Therefore, the district court properly required S.L.F.I. to post a bond for 136% of the entire judgment, including costs and attorney's fees.

*Id.* This decision was made well after I.A.R. 16(a) was adopted on January 1, 1977. We hereby overrule footnote 1 in the *BECO* case. Further, we hold that a supersedeas bond is required to stay enforcement of any judgment for attorney fees and court costs from which an appeal is taken, regardless of the timing of the notice of appeal. The supersedeas bond requirement in I.A.R. 13(b)(15) applies to the entire judgment that is appealed to this Court, including costs and attorney fees.

This holding does not do violence to I.A.R. 16(a) because that rule pertains to costs on appeal—costs that might be awarded by this Court. That rule was derived from former I.C. § 13-203, which dealt with costs incurred solely with respect to an appeal.[3] That cost statute was repealed in 1977. 1977 Sess. Laws, ch. 170, § 8, p. 436.

---

[3] A $300 cost bond was required under former I.C. § 13-203 in order to perfect an appeal to this Court. *Brookshier v. Hyatt*, 91 Idaho 305, 420 P.2d 788 (1966). The *Brookshier* Court noted:

### G. Neither party is entitled to attorney fees on appeal.

On appeal, PAL requests costs pursuant to I.A.R. 40(1) and attorney fees under I.C. § 12-120(1). Similarly, KeyBank requests costs under I.A.R. 40 and 41 and attorney fees under I.C. § 12-120(1). Idaho Code § 12-120(1) provides:

> [I]n any action where the amount pleaded is thirty-five thousand dollars ($35,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action.

I.C. § 12-120(1). For I.C. § 12-120(1) to apply, the pleading must specifically allege that the amount pleaded does not exceed $35,000. *See Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 156, 280 P.3d 176, 183 (2012). Furthermore, I.C. § 12-120(1) "requires the defendant to be notified of the plaintiff's claim against defendant for at least ten days before a complaint can even be filed." *Cox v. Mueller*, 125 Idaho 734, 737, 874 P.2d 545, 548 (1994). "This Court has held that I.C. § 12-120 mandates an award of attorney fees to the prevailing party on appeal as well as at trial." *Chavez v. Barrus*, 146 Idaho 212, 225, 192 P.3d 1036, 1049 (2008).

In this case, KeyBank is the prevailing party on appeal, making it eligible for fees under I.C. § 12-120(1). On appeal, KeyBank contends that a letter it sent to PAL on April 28, 2010, fulfills the statute's requirement that the plaintiff make a demand for payment of its claim ten days in advance of commencement of the action. However, that letter was sent on April 28, 2010, and it did not contain a demand for payment of any sum. In fact, PAL did not actually have the Tri-Steel collateral sold until June 9, 2010, and it was not known until then how much money was at issue. Thus, KeyBank could not make a written demand for payment of its claim to the sale proceeds until after June 9. It did not make a demand for payment between that time and the time it commenced this suit and therefore it has not fulfilled the necessary statutory requirements to obtain a fee award under I.C. § 12-120(1).

### IV.

### CONCLUSION

---

I.C. § 13-203 provides that an appellant must furnish an undertaking on appeal in the sum of $300.00 conditioned that he will pay all damages and costs which may be awarded against him on an appeal or a dismissal thereof.

*Id.* at 306 n.1, 420 P.2d at 789 n.1.

The district court's judgment in favor of KeyBank is affirmed. Costs on appeal are awarded to KeyBank.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.